**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

ROBIN BREDA, *on behalf of herself and*
*all others similarly situated*,

      Plaintiff,

v.

CELLCO PARTNERSHIP d/b/a
VERIZON WIRELESS,

      Defendant.

**Civil Action No.   1:16-cv-11512-DJC**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**
**<u>DEFENDANT VERIZON WIRELESS TO PRODUCE DISCOVERY</u>**

Plaintiff Robin Breda ("Plaintiff") respectfully submits this memorandum in support of her motion to compel Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") to produce class-related information and documents responsive to Plaintiff's interrogatories 2, 3, 4, and 5 and document requests 4, 7, 8 and 42.[1]

## INTRODUCTION

Plaintiff has filed a class action asserting claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A) ("TCPA"), which prohibits robocalls to all cellular telephone numbers without prior express consent of the called party.

Plaintiff is not a Verizon customer yet despite Plaintiff not being a customer, Defendant Verizon called her numerous times. (ECF 1, ¶16). Plaintiff received calls featuring a blended automated/prerecorded voice prompt indicating that the calls were intended for some other consumer she does not know. (*Id.*, ¶¶12-13). Plaintiff repeatedly pressed a button when prompted to indicate that she was not this other consumer to try and opt out of the calls. (*Id.*, ¶14). Verizon nonetheless continued placing the automated calls. (ECF 13, ¶13). Plaintiff additionally spoke to a live Verizon representative, informed Verizon she was receiving the calls in error, and requested that the calls cease (ECF 1, ¶¶12-14; ECF 11, ¶¶2-3). Verizon told Plaintiff the calls would cease, but the calls continued. (ECF 1, ¶3).

Plaintiff alleges Verizon called other persons without their prior express consent and, accordingly, Plaintiff seeks to represent them as a class. (ECF 1, ¶28). Accordingly, Plaintiff seeks to certify three classes of persons: 1) persons Verizon called on their cellular telephone number

---

[1] At this time, Plaintiff is only moving to compel class related requests and reserves her right to move to compel concerning other deficient responses at a later time.

using an autodialer or a prerecorded voice without prior express consent; 2) persons Verizon called on their cellular telephone number after they indicated through an automated prompt that Verizon was calling in error; and 3) persons Verizon called on their cellular telephone number after they orally advised Verizon to stop calling. (*Id.*, ¶22).

In order to support Plaintiff's forthcoming class certification motion (due on June, 1, 2017), Plaintiff served discovery on Verizon to ascertain the class and gather proof about Plaintiff's claims. However, in response Verizon produced almost nothing about the class. A copy of Verizon's objections and responses to Plaintiff's Interrogatories and Requests for Production are attached as Exhibit 1 and Exhibit 2.   As can be seen from Verizon's objections, it declined to produce any information as to the putative classes even though Plaintiff needs that information to show the class requirements of Federal Rule 23 are met.   Class call details are routinely produced – or ordered produced – in similar TCPA class actions. *See Ossola v. Am. Express Co.*, 2015 U.S. Dist. LEXIS 117531, *23 (N.D. Ill. Sept. 3, 2016) ("call data is relevant, and thus produced as standard practice"). and *e.g.*, Exhibit 3 - *Lopez v. Halsted Financial Services, LLC, et al.*, 1:16-cv-02539 Dkt. 89 (N.D. Ill. Dec. 16. 2016) (granting motion before class certification to "produce the class member call data" in a TCPA case.) (adopted in full by Judge Lee, Dkt. No. 115, Feb. 28, 2017); Exhibit 4 - *Ung v. Universal Acceptance Corporation*, 15-cv-00127-RHK-JJK, Dkt. 38 (Dist. Minn. March 21, 2016) (granting motion to compel production of "telephone call data," the "complete names of call recipients," and the "complete phone numbers" of the call recipients in a TCPA case); *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 503-504 (N.D. Ill. 2009) (granting motion to compel defendant in TCPA case to produce "produce a list of all persons it called on cellular telephones with area code 312 or 773 and using a predictive dialer or automatic voice,

since August 19, 2008."); *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, 2014 U.S. Dist. LEXIS 110162 at *5 (S.D. Cal. June 12, 2014) ("the outbound dial list is relevant to the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a), and is therefore discoverable."); *Stemple v. QC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 99582 at *6 (S.D. Cal. June 17, 2013) ("A request for an outbound dial list in a TCPA action is relevant to class certification issues, such as 'the number and ascertainability of potential class members.'"); *Lanteri v. Credit Prot. Ass'n*, 2015 U.S. Dist. LEXIS 184816, *5 (S.D. Ind. June 24, 2014) ("The information is relevant because it is necessary to determine whether the class may be certified."); *Gilman v. ER Solutions*, 2012 U.S. Dist. LEXIS 190602 at *7 (W.D. Wash. Feb. 3, 2012) ("Class certification cannot fairly be evaluated without information on whether others received automated calls …"); *O'Shea v. Am. Solar Solution, Inc.*, 2016 U.S. Dist. LEXIS 23420 at *8 (S.D. Cal. Feb. 18, 2016) ("these requests generally concern the total number of call recipients and the total number of phone calls made to them. [citation omitted]. This information is relevant both to class certification and to the merits of the case."); Exhibit 5 -   *In re: Convergent Telephone Consumer Protection Act Litig.*, No. 13-md-2478, Dkt. 138, p.4 (D. Conn. Mar. 12, 2015) (the call data "is relevant in that it is needed to establish that the class is sufficiently ascertainable and numerous -- something the plaintiffs must prove to certify the class in this matter."); Exhibit 6 -   *Legg v. American Eagle Outfitters, Inc.*, 14-cv-61058, Dkt. 69, p.1 (S.D. Fla. Nov. 21, 2014) (ordering production of database documenting the sending of text messages after a "STOP" request because the data is "relevant discovery on whether a class is ascertainable and to class factors such as numerosity, typicality and commonality.")

     Plaintiff tried to informally resolve these issues with Verizon multiple times as discussed

in more detail in the Certificate of Compliance with Federal Rule 37, Local Rules 7.1 and 37.1, but Verizon refuses to provide any class information, necessitating this motion.

## I.      Verizon's Objections to Producing Class Discovery Should be Overruled

Verizon's objections to producing the class discovery should be overruled because the Court specifically rejected Verizon's phased discovery approach, Verizon can produce the class data, the information Plaintiff is seeking is relevant, and Verizon's objections do not justify its refusal for producing the class discovery.

### A.      The Court's Scheduling Order Does Not Order Phased Discovery

The Parties filed a Joint Report Pursuant to Fed. R. Civ. P. 26(f) and Loc. R. 16.1 with competing discovery plans. (ECF 17). Verizon proposed a phased discovery plan seeking to withhold class call data.   Plaintiff proposed a non-phased discovery plan and argued that the underlying call data was needed both for early evaluation and certification. (*Id.*). The Court's scheduling order (ECF 26) did not phase discovery and adopted Plaintiff's proposed dates for discovery.

Despite this Court's rejection of phased discovery, Verizon objects to producing any class call data in part because no class has been certified.   Verizon claims the information sought is outside the scope of Rule 26. To the extent this is an objection, it fails because the Federal Rules do not let Verizon to unilaterally withhold discovery "until" a class is certified, the Court's scheduling order (ECF 26) does not allow Verizon to withhold discovery on this ground either and, as shown, it is contrary to Rule 26(b) for Verizon to withhold class call discovery because it is relevant to class certification (and the merits), which is why courts routinely order this information produced in TCPA cases as shown above.   *See Supra* at pp.2-3.

4

**B.      Verizon Can Produce The Class Data**

Not only is the matter relevant and certainly discoverable in a TCPA class litigation, Verizon *can* produce the class data despite its representations to the contrary.

Interrogatory Numbers 2, 3, 4, and 5 and Document Requests 4, 7, 8, and 42 explicitly request information about each class call at issue, *e.g.*, call date, call time, cell number called, consent, etc.   Verizon takes the extraordinary position that it cannot produce such information because it cannot determine who fits in the class definition.   In doing so, it repeats the same two-page objection with slight variations for each class discovery request.

However, its two-page objection is wrong and Verizon's own documents and practice contradict the objection.   For example, Verizon has a policy and practice to document wrong number calls, like it did for Plaintiff, where the account is noted that the wrong party was called. A copy of the account notes for Plaintiff showing the notation is attached as Exhibit 7 VZ0001-9 and its practice to document wrong party contacts is set forth as Exhibit 8 VZ0034-45.   These documents also illustrates that Verizon tracks whether the callers are non-customers as well.   *Id*. Similarly, Verizon has an interactive voice recognition ("IVR") system that tracks where consumers wrongfully called – like the Plaintiff – can press "2" if not the customer, thus informing Verizon and creating a record of Verizon's error.   *See* Exhibit 9 VZ0046-52.

As such, identifying the class is a simple matter of properly querying the call records for this information.   Verizon simply does not wish to do so and has rejected Plaintiff's offer to have her database expert conduct the search.   *See Ossola*, 2015 U.S. Dist. LEXIS 117531 at *29-30 ("Amex's argument would appear to be mooted by Plaintiffs' offer to conduct most of the

5

manual review themselves if Amex were to produce the underlying data.").

Further, Verizon contends it cannot identify which of the numbers called is a cellular telephone number. Putting aside that Verizon is the largest cellular provider in the country, Verizon claims that it would have to "…conduct discovery on that person and his/her telephone service provider to determine whether the number was assigned to a cellular telephone at the time the call was placed." *See* Exhibit 1, p.4 at Interrogatory 2.   This objection is not supportable for any defendant let alone one of the largest cellular providers in the country.

Ironically, Verizon has responded to similar subpoenas in other TCPA class actions. For example, in *Keim v ADF*, 12-cv-80577-KAM (S.D. Fl.), Verizon responded to a subpoena providing user information for the numbers that belonged to its customers at the time of the call. A copy of the expert report that summarizes this subpoena and the responses of other carriers is attached hereto as Exhibit 10.

Similarly, Sprint provided the cell phone user information for its customers at the time of the calls at issue in *Johnson v. Yahoo!, Inc.*, 2016 U.S. Dist. LEXIS 256 (N.D. Ill. 2016). (Court granted class certification of Sprint cell users).

As with the class data, Plaintiff offered to use a commercially available cell phone scrub[2] that relies on the Nuestar database and/or subpoena the carriers of those cell numbers to identify class members. Verizon refused these offers as well.

Finally, Verizon's objection that it cannot make the legal determination of who consented

---

[2]  For example, IMS relies on three Neustar files that, together, can be used to identify which of the numbers called were assigned to cellular service at the time of the call.   https://www.ims-dm.com/mvc/page/wireless-ported-numbers/ Neustar is the company that the FCC picked to administer the Do Not Call Database.

is unsupported.   One again, Plaintiff also requested Verizon identify persons who instructed

Verizon to cease calling or where Verizon's records show they were called in error.   *See Exhibit*

*1*, pp. 5 and 8 at interrogatories 4 and 5.   There is no issue of consent for these persons and their

call data is readily available.

In short, Verizon is attempting to create artificial obstacles to producing any class

discovery in an effort to prevent Plaintiff from moving forward with class certification.

### C.        The Class-Related Information Sought is Relevant

"In discovery, the parties are given broad range to explore 'any matter, not privileged,

which is relevant to the subject matter involved in the pending action' so that they may narrow and

clarify the issues and obtain evidence or information leading to the discovery of evidence for future

use in the trial. *See* Fed. R. Civ. P. 26(b)(1); *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S. Ct. 385

(1947)." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 12 (1st Cir. 1986). Plaintiff is entitled to discovery

of any relevant matter. *Crane Sec. Techs., Inc. v. Rolling Optics, AB*, Civil Action No. 14-12428-

LTS, 2017 U.S. Dist. LEXIS 15529, at *8 (D. Mass. Feb. 3, 2017) (Fed. R. Civ. P. 26(b)(1)

provides that parties may obtain discovery "regarding any nonprivileged matter that is relevant to

any party's claim or defense and proportional to the needs of the case."). "As the Supreme Court

has instructed, because discovery itself is designed to help define and clarify the issues, the limits

set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that

reasonably could lead to other matters that could bear on, any issue that is or may be in the case."

*Amoah v. McKinney*, No. 4:14-40181-TSH, 2016 U.S. Dist. LEXIS 56005, at *2-3 (D. Mass. Apr.

27, 2016) (internal citations and quotation marks omitted).

As a proposed class action, the scope of what is relevant includes information concerning

the prerequisites to certification found in Fed. R. Civ. P. 23. *Doyon v. Rite Aid Corp.*, 279 F.R.D.

7

43, 48 (D. Me. 2011) (pre-certification discovery is needed in a class action given that the showing required for certification pursuant to Rule 23 of numerosity, commonality, typicality, and adequacy of representation is more demanding).    Thus, class discovery is critical for Plaintiff's forthcoming class certification motion, because Plaintiff may not simply rely on her pleadings at the class certification stage. *N.O. v. Callahan*, 110 F.R.D. 637, 645 (D. Mass. 1986) (plaintiffs are entitled to conduct discovery concerning the class which they seek to certify) *citing Yaffe v. Powers,* 454 F.2d 1362, 1367 (1st Cir. 1972)). *See also*, *Griffith v. Landry's, Inc.*, 2015 U.S. Dist. LEXIS 138291, *5-*6 (M.D. Fla. 2015) ("Discovery into issues relevant to class certification is warranted and permissible."), *citing Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) ("the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified").

Furthermore, Plaintiff has not only shown that the call data is relevant, but also that the data requested is proportional pursuant to Rule 26(b)(1). *See, Halvorsen v. Credit Adjustments Inc.*, No. 15-cv-6228, 2016 U.S. Dist. LEXIS 48394, at *5 (N.D. Ill. Apr. 11, 2016) (The mere fact that the class in this case is only a putative class does not justify denying discovery. "[A] request is not overly broad and unduly burdensome merely because a class action has not yet been certified . . . ." *quoting Cox v. Sherman Capital LLC*, 2014 U.S. Dist. LEXIS 23006, 2014 WL 712659, at *4 (S.D. Ind. Feb. 24, 2014) (citations omitted)). A contrary conclusion would violate the accepted rule that a plaintiff is entitled to conduct discovery concerning the class which he seeks to certify. *See supra N.O. v. Callahan.*    Further, "[t]he mere fact that a party will be required to expend a considerable amount of time, effort, or expense in answering [a] discovery request[] is not a sufficient reason to preclude discovery." *Halvorsen* 2016 U.S. Dist. LEXIS 48394, at *6 (*quoting*

*Boyer v. Gildea*, 2008 U.S. Dist. LEXIS 92438, 2008 WL 4911267, at *5 (N.D. Ind. Nov. 13, 2008) (internal quotation marks omitted). Notable here, Plaintiff offered to take on all the burden of reviewing and querying the database. Verizon cannot now raise proportionality issues as a valid concern after it rejected Plaintiff's offer to have her database expert query the databases.

Concerning the numerosity prong of Rule 23 alone, Plaintiff is entitled to discovery showing the existence and number of other persons whose cell phones Verizon called.   Further, Plaintiff is entitled to discover evidence to show that the class claims can be resolved from common evidence. *See Gilman*, 2012 U.S. Dist. LEXIS 190602, *7 ("Class certification cannot fairly be evaluated without information on whether others received automated calls to which they did not expressly consent...").   Thus, Plaintiff asked Verizon to identify the persons whose cell phones it called using the same system used to call Plaintiff, where the call was made without the called person's "consent," *i.e.*, where its records showed it called the wrong number or wrong person, or called after receiving a do-not-call or stop-call request. (ECF 1, ¶¶2, 4-5). The call data is particularly relevant to class certification in this case because it will contain relevant information regarding, among other things, (1) the date and time of each call; (2) the telephone number called (this allows for a scrubbing process to determine if it was a cell phone); (3) comments inputted by the Verizon employee or agent; (4) the disposition of each call (*e.g.* answered or voicemail); and (5) whether the telephone number called was for a current Verizon account. Verizon is opposing class certification, thereby requiring Plaintiff's to gather this proof. (ECF 11). *See Halder v. Dig. Equip. Corp.,* Civil Action No. 77-1792-T, Magistrate's No. 77-102-P, 1978 U.S. Dist. LEXIS 18811, at *7-8 (D. Mass. Mar. 24, 1978) ("Defendant's refusal to answer an interrogatory seeking information relating to plaintiff's class action on the ground that such information need not be

provided until the court determines that a class exists was unjustified. Such information is necessarily discoverable in order to help plaintiff meet the burden of demonstrating that a class exists and that such an action is maintainable under Rule 23."). Accordingly, Verizon should be ordered to produce the discovery.

> **D.**    **Verizon's Should Be Compelled to Answer Interrogatories 2, 3, 4, and 5 and Be Compelled to Produce Documents Responsive to Document Requests 4, 7, 8, and 42**

Once a showing of relevance has been made, the objecting party bears the burden of showing that a discovery request is improper. *Doe v. Trs. of Bos. Coll.*, No. 15-10790-DJC, 2015 U.S. Dist. LEXIS 168189, at *2 (D. Mass. Dec. 16, 2015) ("Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes, 2015 Amendment, and defendant's relative and far superior access to the information which necessitates a stronger showing of burden and expense."). *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3rd Cir. 1982) (party resisting discovery "must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.") (citation omitted); *Whiteamire Clinic*, 2013 U.S. Dist. LEXIS 136819, at *9 (N.D. Ill. Sept. 24, 2013) (TCPA class action) ("the burden is upon the objecting party to show why a discovery request is improper.") (citation omitted); *Cont'l Western Ins. Co. v. Opechee Constr. Corp.*, Civil No. 15-cv-006-JD, 2016 U.S. Dist. LEXIS 25872, *4 (D.N.H. Mar, 2, 2016). *See also*, *United Oil Co. v. Parts Assocs.*, 227 F.R.D. 404, 411 (D. Md. 2005), citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) ("Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules."); *Aircrash Disaster*, 172 F.R.D. 295, 307 (N.D. Ind. 1997); *Obiajulu v. City of Rochester*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996); and *Nestle Foods*

*Corp. v. Aetna Cas. And Sur. Co.*, 135 F.R.D. 101 (D.N.J. 1990). However, Verizon's objections do not justify its refusal to produce the requested information.

**Interrogatory No. 2**. Identify the total number, and state the name, address, account number and telephone number of (1) each person in the United States, (2) to whose cellular telephone number, (3) VERIZON placed a non-emergency telephone call (4) using an autodialer or an artificial or prerecorded voice, (5) from July 21, 2012 to the present, and (6) where VERIZON did not have express consent to call said cellular telephone number. Please include the date of each call and the telephone number dialed. If you contend that a response to this interrogatory is impossible, please explain why with specificity, and provide the most complete response possible, including the total number of unique cellular telephone numbers called. Also, if you do not know and cannot determine which calls were made to cellular telephone numbers, answer this interrogatory as if the word "cellular" was omitted from it, and Plaintiff will determine which calls were made to cellular telephones.

**Answer No. 2.**
OBJECTION. As an initial matter, the calls placed to the telephone number indicated in paragraph 9 of the Complaint were placed by VERIZON in an attempt to reach an existing customer of VERIZON. The customer Verizon sought to contact had provided the number indicated in paragraph 9 of the Complaint as a number at which she could be reached. All calls placed by VERIZON to members of the putative class were likewise placed by VERIZON in an attempt to reach existing customers of VERIZON regarding their account and to notify the customer that the status of the account was in jeopardy. As a cellular telephone company, VERIZON is permitted to dial its own customers' cellular telephones using an ATDS or prerecorded message and does not need to obtain consent for its calls. *See,* 7 FCC Red 8752, 8775 (1992). Therefore, this interrogatory is overly broad, unduly burdensome and seeks irrelevant information, which is not proportional to the needs of this case.

For this same reason and others, VERIZON neither offers nor is it required to offer a legal opinion on the issue of whether VERIZON had "express consent" to place any specific call to a cellular telephone number. *See, Nieves-Villanueva v. SotoRivera,* 133 F.3d 92, 99 (1st Cir. 1997) ("In our legal system, purely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge.")

Additionally, Plaintifrs request for what amounts to a "list" of potential class members is outside the scope of Rule 26. *See, Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350 (1978) ("Although respondents' request resembles discovery in that it seeks to obtain information, we are convinced that it more properly is handled under Rule 23(d).")

Finally, this interrogatory imposes an undue burden on VERIZON as even attempting to formulate an answer would require VERIZON to determine whether each specific number it called was assigned to a cellular telephone at the time the call was placed. The only means by which VERIZON could actually determine this information would be to first attempt to

determine the identity of the owner of each telephone number at the time the call was placed and then, conduct discovery on that person and his/her telephone service provider to determine whether the number was assigned to a cellular telephone at the time the call was placed. Even if successful, VERIZON's inquiry would not end there. Instead, VERIZON would then be required to make a legal determination of whether it had "express consent" to call the number. Since Defendant does not need to obtain consent to call its own customers and the calls placed to Plaintiff and the putative class members were placed in an attempt to reach existing VERIZON customers, this interrogatory is overly broad, unduly burdensome and seeks irrelevant information which is not proportional to the needs of this case.

Without waiving these objections, VERIZON states that it does not know the name, address, account number and telephone number of (I) each person in the United States, (2) to whose cellular telephone number, (3) VERIZON placed a nonemergency telephone call (4) using an autodialer or an artificial or prerecorded voice, (5) from July 21, 2012 to the present, and (6) where VERIZON did not have express consent to call said cellular telephone number.

**Interrogatory No. 3**. If you contend that any person responsive to interrogatory No. 2 provided consent to receive the telephone calls, please explain with specificity the basis for such contention for each such person, including citation to the bates number of all documentary evidence you contend supports such contention.

**Answer No. 3.**
OBJECTION. VERIZON identified no "person responsive to interrogatory No. 2." As such, this interrogatory is inapplicable.

Further, as indicated above, VERIZON is permitted to dial its own customers' cellular telephones using an ATDS or prerecorded message and does not need to obtain consent for its calls. *See,* 7 FCC Red 8752, 8775 (1992). Therefore, this interrogatory is overly broad and seeks irrelevant information which is not proportional to the needs of this case.

First, Verizon asserts that Interrogatories 2, 3, 4, and 5 are "overly broad, unduly burdensome, and seeks irrelevant information which is not proportional to the needs of this case." However, Verizon's objections conflict with its documents showing that Verizon tracks the exact information that Plaintiff seeks. As discussed above, Verizon documents instruct employees to input notes (*e.g.*, wrong number, remove number, etc.) which are logged into the system and are displayed in the "outcome" field of the call logs. (*See* Exhibits 7 and 8 VZ0034-43).   In addition, the documents Verizon did produce show that the requested information is exportable (*e.g.* the log

of calls to the Plaintiff noting a wrong party was called) *and* the workflows show that it is in data fields that employees input into the Verizon system whenever there is a wrong number/person call, do-not-call requests, and other stop calling requests. *See* Exhibits 8, 9, and 11 VZ0010-19. Logs and data fields are easily searched and exported.   Verizon simply does not want to produce these documents for the class.

Instead, Verizon is taking the approach that there are "issues" with answering Plaintiff's requests even though Verizon is the only party with the data.   However, Plaintiff can reliably identify the class members through multiple identification services if Verizon would just produce the class data. In addition, Verizon can identify any cell numbers where the number called was a Verizon customer at the time of the offending call. (*See* Exhibit 8-9). As detailed above, there is no issue (and a task Plaintiff offered to undertake) in determining whether at the time the call was placed whether the number was to a cellular telephone number.   Smartly, the only call data that will be produced will be in relation to accounts that Verizon's business records show were calling the wrong number or after revocation.   Plaintiff's request is simple, Plaintiff just needs the call data that Verizon has stored on its system.

Second, the information sought is proportional to the needs of the case and reasonably calculated to lead to admissible evidence because this is a proposed class action under the TCPA. The interrogatories and requests for production seek information about calls made to putative class members that Plaintiff needs for her class certification motion and the merits and, as shown, class call data is routinely produced in TCPA class cases. *See Supra* at p.2,

**Interrogatory No. 4**. Identify the total number, and state the name, address, account number and telephone number of (l) each person in the United States, (2) to whose cellular telephone number, (3) VERIZON placed a non-emergency telephone call (4) using an autodialer or an artificial or prerecorded voice, (5) from July 21, 2012 to the present, and (6) after said person indicated

13

through an automated prompt that VERIZON was calling in error. Please include the date of each call and the telephone number dialed. If you contend that a response to this interrogatory is impossible, please explain why with specificity, and provide the most complete response possible, including the total number of unique cellular telephone numbers called.

Also, if you do not know and cannot determine which calls were made to cellular telephone numbers, answer this interrogatory as if the word "cellular" was omitted from it, and Plaintiff will determine which calls were made to cellular telephones.

**Answer No. 4.**

OBJECTION. As an initial matter, the calls placed to the telephone number indicated in paragraph 9 of the Complaint were placed by VERIZON in an attempt to reach an existing customer of VERIZON. The customer Verizon sought to contact had provided the number indicated in paragraph 9 of the Complaint as a number at which she could be reached. All calls placed by VERIZON to members of the putative class were likewise placed by VERIZON in an attempt to reach existing customers of VERIZON regarding their account and to notify the customer that the status of the account was in jeopardy. As a cellular telephone company, VERIZON is permitted to dial its own customers' cellular telephones using an ATDS or prerecorded message and does not need to obtain consent for its calls. *See,* 7 FCC Red 8752, 8775 (1992). Therefore, this interrogatory is overly broad, unduly burdensome and seeks irrelevant information, which is not proportional to the needs of this case.

VERIZON objects as this interrogatory imposes an undue burden on VERIZON as even attempting to formulate an answer would require Defendant to determine whether each specific number it called was assigned to a cellular telephone at the time the call was placed. The only means by which Defendant could even attempt to determine this information would be to first attempt to determine the identity of the owner of each telephone number at the time the call was placed and then, conduct discovery on that person and his/her telephone service provider to determine whether the number was assigned to a cellular telephone at the time the call was place. Even if successful, Defendant's inquiry would not end at that point as VERIZON would retain the right to call a number belonging to a VERIZON customer even if that customer "indicated through an automated prompt that VERIZON was calling in error." Since Plaintiff has not limited this interrogatory to persons who were not VERIZON customers at the time of the call, this interrogatory is overly broad, unduly burdensome and seeks irrelevant information which is not proportional to the needs of this case.

If Plaintiff were to limit this interrogatory to persons who were not VERIZON customers at the time of the call, this interrogatory would still be overly broad, unduly burdensome and seek irrelevant information which is not proportional to the needs of this case. Simply stated, there is no manner by which VERIZON can determine from a review of its records whether an indication by the answering party "through an automated prompt that VERIZON was calling in error" means VERIZON was calling someone other than the subscriber or a user of an existing VERIZON account.

The type of calls placed to the telephone number indicated in paragraph 9 of the Complaint are

customer service calls. The numbers VERIZON calls on similar calls are either VERIZON owned numbers at the time the call was placed or were provided by the customer as a number at which the customer could be reached.

During outgoing customer service calls, a recorded message plays indicating the name of the VERIZON subscriber VERIZON is trying to reach. If the answering party indicates by pressing a button on the phone that VERIZON has dialed a number at which the VERIZON subscriber cannot be reached, that person is connected to a live person. In those situations, it is VERIZON's policy to "err on the side of caution" by removing the number from the account without verifying whether the number is or is not associated with the account or had been provided as a contact number by the customer.

Many VERIZON accounts contain multiple telephone numbers and users, e.g. family plans. The outgoing message indicates only the name of the person listed as the subscriber on the account. When a similar call is placed, the telephone system first dials the preferred number provided by subscriber. If no preferred number has been provided, the lowest 9-digit "active" number is called regardless of whether that number belongs to the subscriber or a user on the account. That process could and does result in a person other than the person identified in the outgoing message receiving the call. If there is no answer, the telephone system will proceed to call the next lowest 9-digit "active" number until a call is answered or the list of telephone numbers has been exhausted.

If the preferred number provided by the customer is called and the call is not answered, the telephone system will call the lowest-numeric 9-digit "active" number on account regardless of whether that number belongs to the subscriber or a user on the account. That could and does result in a person other than the person identified in the outgoing message receiving the call. If there is no answer, the telephone system will proceed to call the next lowest 9-digit "active" number until a call is answered or the list of telephone numbers has been exhausted. If an outgoing call was answered by a "user" who is not also the "subscriber" on multiple-number account, the outgoing message using subscriber's name would play. So, the answering party could "indicate[] through an automated prompt that VERIZON was calling in error" yet, VERIZON would have right to call the number as it is a VERIZON-owned number associated with the account at issue.

This interrogatory seeks irrelevant information which is not proportional to the needs of this case, as the mere fact that a "person indicated through an automated prompt that VERIZON was calling in error" does not establish that VERIZON was, in fact, calling the wrong party as implied by Plaintiff's interrogatory.

Additionally, Plaintiff's request for what amounts to a "list" of potential class members is outside the scope of Rule 26. *See, Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350 (1978) ("Although respondents' request resembles discovery in that it seeks to obtain information, we are convinced that it more properly is handled under Rule 23(d).")

**Interrogatory No. 5**. Identify the total number, and state the name, address, account number and telephone number of (1) each person in the United States, (2) to whose cellular telephone number, (3) VERIZON placed a non-emergency telephone call (4) using an autodialer or an artificial or prerecorded voice, (5) from July 21, 2012 to the present, and (6) after said person had advised VERIZON to cease calling. Please include the date of each call and the telephone number dialed. If you contend that a response to this interrogatory is impossible, please explain why with specificity, and provide the most complete response possible, including the total number of unique cellular telephone numbers called. Also, if you do not know and cannot determine which calls were made to cellular telephone numbers, answer this interrogatory as if the word "cellular" was omitted from it, and Plaintiff will determine which calls were made to cellular telephones.

**Answer No. 5.**
OBJECTION.

As an initial matter, the calls placed to the telephone number indicated in paragraph 9 of the Complaint were placed by VERIZON in an attempt to reach an existing customer of VERIZON. That customer provided the number indicated in paragraph 9 of the Complaint as a number at which she could be reached. All calls placed by VERIZON to members of the putative class were likewise placed by VERIZON to attempt to reach and existing customers of VERIZON. VERIZON objects as this interrogatory imposes an undue burden on VERIZON as even attempting to formulate an answer would require Defendant to determine whether each specific number it called was assigned to a cellular telephone at the time the call was placed. The only means by which Defendant could even attempt to determine this information would be to first attempt to determine the identity of the owner of each telephone number at the time the call was placed and then, conduct discovery on that person and his/her telephone service provider to determine whether the number was assigned to a cellular telephone at the time the call was place. Even if successful, Defendant's inquiry would not end at that point as VERIZON would retain the right to call a number belonging to a VERIZON customer even if that customer "advised VERIZON to cease calling." Since Plaintiff has not limited this interrogatory to persons who were not VERIZON customers at the time of the call, this interrogatory is overly broad, unduly burdensome and seeks irrelevant information which is not proportional to the needs of this case. If Plaintiff were to limit this interrogatory to persons who were not VERIZON customers at the time of the call, this interrogatory would still be overly broad, unduly burdensome and seek irrelevant information which is not proportional to the needs of this case. Simply stated, there is no manner by which VERIZON can determine from a review of its records the identities of all persons who continued to receive calls "after said person had advised VERIZON to cease calling." If an answering party requests no further calls, it is VERIZON's policy to "err on the side of caution" by removing the number from the account. The VERIZON representative who spoke with the person answering the relevant call to the telephone number indicated in paragraph 9 of the Complaint failed to properly update the information in VERIZON's database to ensure no further calls would be placed to the number. As such, VERIZON only became aware that the person answering that call requested no further calls when it reviewed its call recordings related to the account at issue after the instant lawsuit was filed. If any other persons "advised VERIZON to cease calling" and received calls thereafter, it was almost certainly due to the error

16

the led to Plaintiff receiving additional calls, i.e. the failure of the VERIZON representative to update the information in VERIZON's database to ensure no further calls would be placed. Hence, only the person who "advised VERIZON to cease calling" and received calls thereafter would be aware of the continued calls.

In order to determine if calls were placed after the answering party "advised VERIZON to cease calling", VERIZON would have to review every existing call recording for every similar call placed during the relevant period. The number of such call recordings exceeds 5 million. Even if VERIZON could review every call recording and isolate all calls in which the answering party "advised VERIZON to cease calling", the inquiry would not be complete as VERIZON would retain the right to call an existing customer even if the existing customer "advised VERIZON to cease calling." Therefore, this interrogatory is overly broad, unduly burdensome and seeks irrelevant information which is not proportional to the needs of this case.

Additionally, Plaintiff's request for what amounts to a "list" of potential class members is outside the scope of Rule 26. *See, Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350 (1978) ("Although respondents' request resembles discovery in that it seeks to obtain information, we are convinced that it more properly is handled under Rule 23(d).")

Without waiving these objections, VERIZON states it does not know the name, address, account number and telephone number of (I) each person in the United States, (2) to whose cellular telephone number, (3) VERIZON placed a nonemergency telephone call ( 4) using an autodialer or an artificial or prerecorded voice, (5) from July 21, 2012 to the present, and (6) after said person had advised VERIZON to cease calling.

The information sought from Interrogatories 4 and 5 is nearly the same as Interrogatory 2, except Interrogatory 4 asks Verizon to identify potential class members Verizon called in error, and Interrogatory 5 asks Verizon to identify potential class members who advised Verizon to cease calling. Verizon's responses to Interrogatories 4 and 5 are insufficient for the same reasons that its response to Interrogatory 2 is insufficient.  Additionally, Verizon can easily answer Interrogatories Numbers 4 and 5 since they request information that Verizon tracks related to wrong number/party call and calls where Verizon was told to stop calling. *See e.g.*, Exhibits 7 & 8.  Similarly, Verizon's objections to Interrogatories 4 and 5 are nearly identical to its objections to Interrogatory 2.

**Request for Production No. 4**. The complete database tables showing any calls responsive to Requests #2, 4, and/or 5 above, or all other records of such calls.
**Response:** VERIZON identified no "calls responsive to Requests #2, 4, and/or 5." As such, this Request is inapplicable.

Document Request 4 seeks the actual call data for the calls Verizon made to class members

described in Interrogatories 2, 4, and 5. Verizon is perfectly capable of producing this information.

As its answer states in Document Request 1, Verizon was able to produce the call history for

Plaintiff. (*See* Exhibit 7). The limited information produced so far demonstrates that Verizon

maintains the requested information, *i.e.*, the class member data, and that it will not be onerous for

Verizon to produce. Verizon just objects to producing that same information for the putative class

members.   Verizon's response is just "Verizon identified no 'calls responsive to Requests #2, 4,

and/or 5.' As such, this Request is inapplicable."

**Request for Production No. 7**. For each person or telephone number responsive to Requests #2, 4, and/or 5 above please provide all documents, data or things that show the individual's consent to receive telephone calls on a cellular telephone.
**Response:** VERIZON identified no "calls responsive to Requests #2, 4, and/or 5." As such, this Request is inapplicable.

**Request for Production No. 8**. All documents that identify the persons responsive to Requests #2, 4, and/or 5 above.
**Response:** VERIZON identified no "calls responsive to Requests #2, 4, and/or 5." As such, this Request is inapplicable.

While Document Requests 7 and 8 seek the data and documents in Verizon's possession

that show the individual's consent to receive telephone calls on a cellular telephone and documents

to identify the class members. Again, Verizon's response is the same as Document Request 4 and

is inadequate, "VERIZON identified no 'calls responsive to Requests #2, 4, and/or 5.' As such this

Request is inapplicable."

In short, as with Interrogatory 2, Verizon's objections do not justify its failure to produce

complete responses to Interrogatories 4 and 5 and documents for Requests for Production 4, 7, and

18

8. Verizon's objections should be overruled, and Verizon should be ordered to produce all information and documents requested.

**Request for Production No. 42**. All records of stop, do-not-call, do-not-contact, wrong-number, wrong-person or similar notations made between July 21, 2012 and the present.
**Response:** VERIZON objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks irrelevant information which is not proportional to the needs of this case. To be clear, the calls placed to the telephone number indicated in paragraph 9 of the Complaint were placed by VERIZON in an attempt to reach an existing customer of VERIZON. That customer provided the number indicated in paragraph 9 of the Complaint as a number at which she could be reached. All calls placed by VERIZON to members of the putative classes were likewise placed by VERIZON to attempt to reach and existing customers of VERIZON. As a cellular telephone company, VERIZON is permitted to dial its own customers' cellular telephones using an ATDS or prerecorded message and does not need to obtain consent for its calls. *See,* 7 FCC Rcd 8752, 8775 (1992).

Finally, Document Request 42 seeks documents reflecting all notifications Verizon received to stop calling or that it was calling a wrong party or number, as well as records of calls made to such persons after receiving those notifications. This evidence is relevant to identifying persons that Verizon called without consent or where consent was revoked. Verizon produced no information in response to this request. Instead, Verizon makes similar objections it made in response to Interrogatory 2 which, as shown above, does not justify its refusal to produce documents related to this request. Accordingly, for the same reasons discussed above, Verizon's objections to Document Request 42 should be overruled, and Verizon should be ordered to produce all of the information sought by this request.

## II.     Certificate of Compliance with Federal Rule 37, Local Rules 7.1 and 37.1

On February 8, 2017, Plaintiff's counsel followed-up on an earlier unanswered email to Verizon's counsel for a meet and confer regarding Verizon's refusal to produce the class data. (*See* Exhibit 12). Additional correspondence was exchanged between the parties, and on February 13, 2017 Verizon's counsel informed Plaintiff's counsel that Verizon would not be supplementing its

discovery responses. (*Id.*). Subsequently the parties agreed to file the exhibits to the motion to compel under seal and that Plaintiff would be filing this motion to compel.    As of the date of this filing, Plaintiff has only received fifty-five pages of documents and has not received the class data that was requested. Plaintiff made multiple efforts to confer with Verizon to try to resolve the above issues. This includes multiple emails detailing the deficiencies in Verizon's responses and proposing conference calls with Verizon's counsel.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests that the Court enter an order compelling Defendant Verizon to provide complete substantive answers to Plaintiff's First Set of Interrogatories Numbers 2, 3, 4, and 5, and to produce documents responsive to Requests for Production Numbers 4, 7, 8, and 42.


Dated: March 8, 2017                              Respectfully Submitted,


*/s/ Keith J. Keogh*                                      Sergei Lemberg, Ct. Bar No. 25027CT
Keith J. Keogh (Pro Hac Vice) Ill. Bar No. 6257811IL   Lemberg Law LLC
Keogh Law, Ltd.                                        43 Danbury Road
55 W. Monroe St., Suite 3390                           Wilton, CT 06897
Chicago, Illinois      60603                            203.653.2250 x5500 (office)
312.726.1092 (office)                                  203.653.3425 (fax)
312.726.1093 (fax)                                     slemberg@lemberglaw.com
keith@keoghlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 8, 2017, I electronically field the foregoing document

with the Clerk of the Court using CM/ECF, which perfected service on all parties of record.

Respectfully Submitted,

*/s/ Keith J. Keogh*
Keith J. Keogh (Pro Hac Vice) Ill. Bar No. 6257811IL
Keogh Law, Ltd.
55 W. Monroe St., Suite 3390
Chicago, Illinois      60603
312.726.1092 (office)
312.726.1093 (fax)
keith@keoghlaw.com

21