UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ROBIN BREDA, *on behalf of herself and all others similarly situated*,

    Plaintiff,

v.

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,

    Defendant.

Civil Action No.   1:16-cv-11512-DJC

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
VERIZON WIRELESS'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Robin Breda ("Plaintiff"), respectfully submits her response in opposition to Defendant Cellco Partnership d/b/a Verizon Wireless' ("Verizon" or "Defendant") Motion for Summary Judgment.

**INTRODUCTION**

Plaintiff brings a claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), because Verizon repeatedly placed prerecorded robocalls to her cellular telephone number regarding an unrelated third party's debt even after Plaintiff notified Verizon, repeatedly, through an automated (and prerecorded) prompt and in live conversations, that she was not the person Verizon was attempting to reach. PSAF ¶¶ 1 & 2.[1]

In its Motion for Summary Judgment, Verizon argues that Plaintiff cannot recover under the TCPA because it contends that Plaintiff's cellular telephone number is not assigned to cellular

---

[1] "PSAF" refers to Plaintiff's State of Additional Facts included in her response to Defendant's Local Rule 56.1 statement of facts.

1

telephone service but instead is "assigned to a 'wireline.'" [redacted]

**FACTS**

Plaintiff's cellular telephone that received these calls is the Moto G, Third Generation, Android Version 5.11. PSAF ¶ 19. This is the cellular smartphone telephone that Plaintiff carries with her outside the home, was the cellular smartphone telephone she brought into her deposition, and is essentially identical to many of the cellular smartphones Verizon itself sells. *Id*. As a demonstrative illustration, a picture of a Moto G Third Generation is below:

[redacted]



██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████

   ██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

   ██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

I[redacted]

> [redacted]

[redacted]

[redacted]

> [redacted]

[redacted]

> [redacted]

[redacted]

> [redacted]



<mark>Case 1:16-cv-11512-DJC Document 66 Filed 05/30/17 Page 5 of 16</mark>



The above facts indisputably show that Plaintiff's telephone number is assigned to cellular service. As such, Verizon's motion should be denied.

## THE TELEPHONE CONSUMER PROTECTION ACT

Congress enacted the TCPA because it found that "automated or prerecorded calls are a nuisance and an invasion of privacy." *See* Pub. L. No. 102-243, § 2, 105 Stat. 2394 (Dec. 20, 1991). Congress found that "banning such automated or prerecorded telephone calls [except

5

when made with prior express consent] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.*   Indeed, the Supreme Court has noted that consumers are outraged over the proliferation of automated telephone calls that are intrusive, nuisance calls, found to be an invasion of privacy by Congress. *See Mims v. Arrow Fin. Servs.*, 132 S. Ct. 740, 745 (2012) (summarizing the congressional findings underlying the TCPA); *see also Patriotic Veterans, Inc. v. State of Indiana*, 736 F.3d 1041, 1050 (7th Cir. 2013) (referring to "Congress's goal" in enacting TCPA "to protect the privacy of citizens against unsolicited telephone calls"); *Czech v. Wall St. on Demand, Inc.*, 674 F. Supp. 2d 1102, 1106 (D. Minn. 2009) ("unwanted text messages, like spam e-mail, are an annoyance").   The TCPA is "aimed at protecting recipients from the intrusion of receiving unwanted communications." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 2007 U.S. Dist. LEXIS 11650, *11 (W.D. Wash. Feb. 16, 2007).

Pertinent here, the TCPA provides that:

(1) It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

****

(iii) to any telephone number assigned to a paging service, cellular telephone service,       specialized mobile radio service, or other radio common carrier service, or any service for     which the called party is charged for the call, unless such call is made solely to collect a   debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b).   Thus, the TCPA prohibits automated or prerecorded calls to numbers assigned to a cellular telephone service.

Though Verizon cites several cases for the proposition that this provision does not apply to VOIP wireline service, those cases have no relevance here because, as shown above, Republic

Wireless provided <u>both</u> WI-FI service <u>and</u> cellular service to Plaintiff's telephone number.[2]

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
████████████

## ARGUMENT

### I. PLAINTIFF'S NUMBER IS ASSIGNED TO A CELLULAR TELEPHONE SERVICE

Regardless of how a phone number is being reported, what matters is the service to which it is assigned. The statute prohibits calls "any telephone number" "assigned to" …"cellular telephone service, or other radio common carrier service…" 47 U.S.C. § 227(b).   Here, the facts show ███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
████████████████████████████ Thus, Verizon ignores every single piece of evidence establishing that Plaintiff actually receives cellular telephone service from a cellular telephone service provider.

---

[2] Even if Plaintiff retained and used just VOIP service (she does not), that alone would not merit summary judgment for Defendant. *See Ghawi v. Law Offices of Howard Lee Schiff, P.C.*, 2015 WL 6958010, * 4   (D. Conn. November 10, 2015) ("[T]here is no apparent conceivable reason on the record why the use of a VoIP number to connect to a cell phone should be treated differently from a direct call to a cell phone.").

It instead argues that Plaintiff's number was "assigned to a wireline" simply because the number was erroneously listed in a third party database as such. Of course, Verizon never once states Plaintiff's cellular telephone number was assigned to a "wireline service" because it knows that would not be true. The sole basis for Verizon's argument that Plaintiff's number is not assigned to cellular service is that Plaintiff's number has been listed by a third party directory as a wireline. How a number is listed or designated is not dispositive. What is dispositive is whether the number is actually "assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Verizon has not cited a single case to support its argument that a third party's mis-designation of a number as "wireline" rather than "cellular," where the number is actually assigned to a cellular service, should control the outcome. How a third party lists a number cannot be dispositive in the face of contrary evidence.[3] ███████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████

The focus of the TCPA is on the services actually assigned to the telephone number, not the designation of the number by some third party unrelated to the service. A 2015 Federal

---

[3] Plaintiff submits that Neustar is a useful tool to initially determine if a number is a cell number but Plaintiff's case shows that Nuestar's data is underinclusive as it does not control for wireline's being misreported. This would not be material issue for the class as the top five carriers have 95% of the cellular market and the Neustar search could easily be modified to control for mobile carriers like Republic Wireless. Further, Plaintiff can subpoena the carriers directly to remove any doubt which numbers are assigned a cellular service.

Communication Commission ("FCC") order (the "2015 FCC Order") confirms Plaintiff's number is assigned to a cellular service. The FCC held that the term cellular service is broad and encompasses all mobile services:

> The TCPA applies the consent requirement to calls to "cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). In this Declaratory Ruling and Order we sometimes refer to that service as "wireless service" and use it to describe the nature of the service used by consumers rather than referring to only those services provided using the spectrum block licensed by the Commission under the name "Cellular Service." We note in this regard that consumers use competing, functionally equivalent (from the consumer perspective) services using spectrum licensed under other names—such as "Personal Communication Service," "700 megahertz service," and "Advanced Wireless Service"—that did not exist at the time the TCPA was enacted. If we were to interpret the TCPA to restrict the Commission's exemption authority to only services offered using the "Cellular Service" spectrum block, neither consumers using functionally equivalent services in other spectrum blocks nor persons who call them would enjoy the benefits of any exemption the Commission grants. This would create the anomalous result of an exemption applying based on spectrum block names rather than on the nature of the service used by consumers. It also would place a heavy burden on callers who wish to rely upon the exemption, before making any call, to identify the spectrum block used to serve the consumers they wish to call. Thus, for purposes of our exemption authority under the TCPA, we focus on the consumer-facing nature of the service being used rather than on which spectrum block is used to provide the service.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, fn. 174 (July 10, 2015).

they were transmitted on the cellular spectrum, even if the specific calls were transmitted only through Wi-Fi, the number would still be assigned to cellular service because the focus is "on the consumer-facing nature of the service being used." *Id*. In this case, the consumer-facing nature of the service is the same as any other cellular service. Plaintiff's cellular telephone number was initially assigned to her by Verizon and is now assigned to a cellular service through Republic Wireless. She uses her Moto G3 cellular telephone like any other cellular phone – she carries it

9

around in her pocket and receives calls, wirelessly, both indoors and outdoors.  This is quintessential cellular telephone service as far as any consumer is concerned.  Further, her plan actually includes cellular service, and many of the calls at issue were connected via the Sprint or T-Mobile cellular network.

This District has previously held that the FCC's TCPA Orders are nonrenewable. *In re Collecto, Inc.*, 2016 U.S. Dist. LEXIS 16319, *7 (D. Mass. 2016).  In doing so, the court rejected defendant's argument that the FCC TCPA's Orders were not binding and held:

> Collecto's opening argument does not survive the Administrative Orders Review Act (Hobbs Act), 28 U.S.C. § 2342(1), under which this court lacks jurisdiction to set aside, suspend, or adjudicate the validity of an FCC ruling and final order. *See Fed. Commc'ns Comm'n v. ITT World Commc'ns*, 466 U.S. 463, 468-469, 104 S. Ct. 1936, 80 L. Ed. 2d 480 (1984) (the Hobbs Act precludes any exercise of a district court's jurisdiction, even over a claim that an agency acted ultra vires)

*Id*.

This District also noted that the Courts of Appeals are unanimous that the FCC's TCPA Orders are non-reviewable. *Id*. at n. 5 (citing *CE Design v. Prism Bus. Media*, 606 F.3d 443, 448 (7th Cir. 2010 ) (FCC orders are binding under etc Hobbs Act and cannot be challenged directly or indirectly); *Mais v. Gulf Coast Collection Bureau*, Inc., 768 F.3d 1110, 1120-1121 (11th Cir. 2014) ("By refusing to enforce the FCC's interpretation, the district court exceeded its power."); *Nack v. Walburg*, 715 F.3d 680, 686 (8th Cir. 2013) ("To hold [that a party can challenge the validity of a regulation] merely because the issue has arisen in private litigation would permit an end-run around the administrative review mandated by the Hobbs Act. Such an end run could result in a judicial determination of a regulation's invalidity without participation by the agency and upon a record not developed by the agency."); *Leyse v. Clear Channel Broad., Inc.*, 545 Fed. App'x 444, 457-458 (6th Cir. 2013) ("Attacks such as these — on the procedural genesis of

administrative rules — are exactly the kind of facial attacks on the validity of FCC orders that the Hobbs Act meant to confine.") (internal citation and quotation marks omitted); *United States v. Dunifer*, 219 F.3d 1004, 1007 (9th Cir. 2000) ("We have squarely held . . . that challenging FCC regulations is equivalent to an action to enjoin, annul, or set aside an order of the FCC.").

The 2015 FCC Order is consistent with long standing First Circuit case law. In *Town of Amherst v. Omnipoint Communs. Enters., Inc.*, 173 F.3d 9, 10 n.1 (1st Cir. 1999), the court examined a zoning issue for wireless towers and held the term cellular telephone service was expansive even back in 1999:

> Although often called "cellular" telephone service, several different technologies compete. Omnipoint uses a high frequency, digital system called personal communication service, or "PCS." Almost all systems employ hand-held telephone sets communicating by radio with antennas strategically located on towers or buildings; each antenna is connected eventually to the land-line telephone network.

Under any interpretation, the *service* the Plaintiff's number is assigned to is a cellular service and does not stop becoming a cellular service simply because it has additional capabilities (Wi-Fi and VOIP), none of which are wireline.

The FCC dealt with a similar issue when it analyzed whether using a computer to communicate with a cell phone subscriber via a text message is a covered "call" under the TCPA. The FCC held:

> 113. There is no dispute that **Internet-to-phone text messaging technology is used to initiate calls that ultimately are carried over wireless carriers' networks to wireless consumers via their respective unique telephone numbers**. Rather than using a wireless phone to initiate the call, the sender has chosen to initiate text messages using equipment that nevertheless "dials" numbers in a fashion required by and compatible with the technical characteristics, features, and functionalities of the wireless carrier's network.
>
> 114. We conclude that by addressing a message using the consumer's wireless telephone number (e.g., 5555551111@sprint.messaging.net or entering a message on a web portal to be sent to a consumer's wireless telephone number) and sending

11

a text message to the consumer's wireless telephone number, **the equipment dials a telephone number and the user of such technology thereby makes a telephone call to a number assigned to a wireless service as contemplated in section 227(b)(1) of the Act**. We disagree, therefore, with the commenter who suggests that equipment used to originate Internet-to-phone text messages does not meet the second element of the TCPA's autodialer definition because that technology does not use a "traditional" dialing technique.

2015 FCC Order ¶ 113- ¶ 114 (emphasis added).

This FCC holding that a text message that uses internet calling instead of traditional telephone dialing is a call supports Plaintiff's position that her cellular telephone number initially assigned to her by Verizon as part of her Verizon cellular service is assigned to a cellular service.



Finally, Plaintiff agrees with Verizon that the call path of any particular call is not determinative as long as the number is assigned to a cellular service.

Therefore, Plaintiff's cellular number was assigned to a cellular service, the calls she received were on her cellular android phone, and were connected to Plaintiff through a cellular network. There is no question the TCPA's prohibition against calling cellular phones applies and Verizon's motion for summary judgment should be denied.

## II. PLAINTIFF NEED NOT ESTABLISH THAT SHE WAS CHARGED FOR THE CALLS

It appears that Verizon agrees that the requirement to be charged for a call only applies to numbers that are not assigned to cellular service. *See* Verizon's memorandum (attempting to distinguish *Levy* by arguing "Unlike here, the Levy court dealt with telephone calls made to a telephone assigned to a "cellular telephone service." See 972 F. Supp. 2d at 422)

To the extent that Verizon is instead implying that calls assigned to cellular service need to be charged for each call, it is mistaken. Once again, the TCPA prohibitions against calls without consent apply to a number assigned to:

> 1) a paging service,
>
> 2) cellular telephone service,
>
> 3) specialized mobile radio service, or other radio common carrier service,
>
> 4) or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

The requirement that the called party be charged for a call only applies to the catch all "or any other service." *Levy v. Receivables Performance Mgmt., LLC*., 972 F. Supp. 2d 409, 423 (E.D.N.Y. 2013). Since Plaintiff's number was assigned to a cellular telephone service, the issue of charges is irrelevant. The court in *Levy* summarized the majority of the case law as follows:

> PM further attempts to escape liability by arguing that plaintiff's failure to prove that he was charged for RPM's calls to his cell phone is fatal to the TCPA claim. (Def.'s Cross Mot. at 19¬24.)
>
> To make this argument, RPM takes a portion of the statutory language out of context for which the called party is charged for the call in an effort to impose a requirement on the plaintiff that he demonstrate that he was charged for the calls made by RPM's ATDS in order to recover under the TCPA.
>
> However, as plaintiff indicates, courts faced with this argument have deemed it meritless as a matter of statutory construction, and thus have routinely held that a

> plaintiff need not prove that he was charged for a cellular phone call to state a claim under the TCPA. *Castro*, 959 F.Supp.2d at 721, 2013 WL 4105196, at *17, 2013 U.S. Dist. LEXIS 115089, at *57¬58 (Under the Rule of the last antecedent, which provides that, where no contrary intention appears, a limiting clause or phrase should be read as modifying only the noun or phrase that it immediately follows, the Court finds that the phrase for which the called party is charged for the call only modifies any service. (citing cases)); see, e.g., *Lynn v. Monarch Recovery Mgmt.*, 953 F.Supp.2d 612, 625 n. 37, No. WDQ¬11¬2824, 2013 WL 3071334, *7 n. 37, 2013 U.S. Dist. LEXIS 84841, at *28¬29 n. 37 (D.Md. June 17, 2013) ([Defendant] does not dispute that, under the doctrine of last antecedent, the phrase for which the called party is charged for the call only modifies any service. (citing cases)); *Manfred v. Bennett Law*, No. 12¬CV¬61548, 2012 WL 6102071 at *2, 2012 U.S. Dist. LEXIS 173935, at *5 (S.D.Fl. Dec. 7, 2012) ([T]he Court notes that the language of the statute makes it apparent that Plaintiff need not allege that he was charged for the call if he has alleged that the call was made to his cell phone.); *Gutierrez v. Barclays Grp.*, No. 10cv1012 DMS (BGS), 2011 WL 579238, at *5¬6, 2011 U.S. Dist. LEXIS 12546, at *14¬15 (S.D.Cal. Feb. 9, 2011) (explaining that a plaintiff need not show that he was charged for the calls at issue in order to prevail under the TCPA); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F.Supp.2d 999, 1009 (N.D.Ill.2010) ([R]eading the FCC's statement to require that a party be charged for a call in order for a violation of § 227 to occur is contrary to the plain language of the statute. Due to the occurrence of two disjunctive prepositions in the relevant portion of § 227, the phrase for which the called party is charged for the call only modifies any service.17
>
> This Court agrees with the reasoning employed by numerous other courts both within and outside of this circuit and concludes, therefore, that plaintiff's failure to prove that he was charged for any of RPM's calls to his cell phone has no bearing on the efficacy of his TCPA claim.

*Id* at 423-425 (footnotes omitted). As in *Levy*, and the "numerous other courts" to have addressed the issue, whether or not Plaintiff was charged for any of Verizon's unauthorized and unconsented to automated and prerecorded calls "has no bearing on the efficacy of [Plaintiff's] TCPA claim and Defendant's motion should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion for Summary Judgment be DENIED.

Dated: May 30, 2017
Respectfully submitted,
*Counsel for Plaintiff*

| /s/ Keith J. Keogh | /s/ Sergei Lemberg |
|---|---|
| Keith J. Keogh (Pro Hac Vice) | Sergei Lemberg |
| Ill. Bar No. 6257811IL | Lemberg Law LLC |
| Keogh Law, Ltd. | 43 Danbury Road |
| 55 W. Monroe St., Suite 3390 | Wilton, CT 06897 |
| Chicago, Illinois   60603 | 203.653.2250 x5500 (office) |
| 312.726.1092 (office) | 203.653.3425 (fax) |
| 312.726.1093 (fax) | slemberg@lemberglaw.com |
| keith@keoghlaw.com | |

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on May 30, 2017, I electronically field the foregoing document with the Clerk of the Court using CM/ECF, which perfected service on all parties of record.

 */s/ Sergei Lemberg*
 Sergei Lemberg