UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBIN BREDA,<br><br>    Plaintiff,<br><br>    v.<br><br>CELLCO PARTNERSHIP<br>d/b/a VERIZON WIRELESS,<br><br>    Defendant. | Civil Action No. 16-11512-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                              November 17, 2017

### I.    Introduction

Plaintiff Robin Breda ("Breda") brings two claims against Cellco Partnership d/b/a Verizon Wireless ("Cellco") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), for violations of the limitations on making calls using "any automatic telephone dialing system or artificial or prerecorded voice" to a cellular telephone service, 47 U.S.C. § 227(b)(1)(A). D. 1. Cellco has moved for summary judgment. D. 58. Cellco subsequently moved to compel arbitration. D. 71. For the reasons stated below, the Court DENIES Cellco's motion to compel arbitration, D. 71, and ALLOWS its motion for summary judgment, D. 58.

### II.   Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the

1

outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III. Factual Background

Unless otherwise noted, the following material facts are undisputed.[1] Cellco placed calls to Breda's phone number to discuss a Verizon customer's account status in error (the "Verizon Calls"). D. 67, ¶ 5. Cellco had an inaccurate contact phone number for the account, which caused Cellco to continue to call Breda with recorded messages about another person's account status. Id. When Breda received the Verizon Calls, she had moved her phone service and phone number from Cellco to Republic Wireless ("Republic"). Id., ¶ 6. Republic provides telephone service to customers using technology that "prefers" Voice over Internet Protocol ("VoIP") for the

---

[1] The Court hereinafter cites to Breda's response to material facts, D. 67 (which appears in unredacted form under seal, D. 82), when referencing the undisputed material facts. The Court notes that Breda denies certain facts alleged by Cellco in its response, but the subset of those facts that the Court cites here are undisputed.

transmission of its customers' calls. Id., ¶ 7. Republic does not have direct access to telephone numbers itself and, therefore, "ported" Breda's telephone number from Cellco to Bandwidth, a third party that provides VoIP service for Republic's customers. D. 67, ¶¶ 8-10. Bandwidth does not provide cellular telephone service and its customers' phone numbers are not cellular telephone numbers, but rather "wireline" numbers. D. 67, ¶¶ 11-12. Breda pays a fixed monthly fee for her phone service through Republic and was not charged on a per call basis for the Verizon Calls. Id., ¶¶ 13-14.

## IV. Procedural History

Plaintiffs instituted this action on July 21, 2016. D. 1. The Court has heard the parties on the then ripe, pending motion for summary judgment, D. 58, and took the matter under advisement.[2] D. 80. Since that hearing, Cellco's motion to compel arbitration, D. 71, has become ripe as Breda has filed its opposition to same, D. 84. The Court now turns to both motions.

## V. Discussion

### A. **Motion to Compel Arbitration**

Before reaching the merits of Cellco's motion for summary judgment, Cellco has moved to compel arbitration and dismiss this case, staying consideration of any other pending matters in this case until the Court rules on this motion. D. 71.

Verizon's relationship with Breda was governed by the Verizon Wireless Customer Agreement (the "Agreement"). D. 73-1. Breda contends that the Agreement does not govern the activity forming the basis of her TCPA claim in this case. The Agreement defines the terms of Breda's "service" provided by Verizon. D. 73-1 at 2. The Agreement defines Breda's service as

---

[2] Cellco moved for leave to file a reply brief regarding its motions for summary judgment. See D. 76, 78. The Court has reviewed and considered that reply, and, accordingly, those motions (and a related motion to seal, D. 70) are ALLOWED *nunc pro tunc*.

3

"allowances and features, where you can use them . . . and their monthly and pay-per-use charges." Id. The Agreement states that when a phone number is ported to another provider, Verizon treats such a request "as though you asked us to cancel your Service for that number." Id. at 4. The arbitration clause of the Agreement states that it applies to "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US." Id. at 9.

"A party who is seeking to compel arbitration must demonstrate 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011)). "Whether or not a company is bound to arbitrate . . . is a matter to be determined by the court." Litton Fin. Printing Div. v. N.L.R.B., 501 U.S. 190, 208 (1991) (citing AT&T Techs., Inc. v. Comm'ns Workers, 475 U.S. 643, 651 (1986)). If the agreement a party seeks to enforce has expired, there is still a presumption "in favor of post-expiration arbitration of matters unless 'negated expressly or by clear implication'" in the contract. Litton, 501 U.S. at 204 (quoting Nolde Bros., Inc. v. Bakery Workers, 430 U.S. 243, 255 (1977)). The First Circuit has interpreted this exception to the presumption as a two-pronged inquiry: first, to "determine if the particular dispute has its real source in the contract," and if that is established, to "consider whether postexpiration arbitration of the issue was negated expressly or by clear implication." United Parcel Serv., Inc. v. Union De Tronquistas De P.R., Local 901, 426 F.3d 470, 473 (1st Cir. 2005). Because Breda ported her phone service from Verizon to Republic, under the terms of the Agreement the Court finds that the Agreement was terminated before the Verizon Calls that form the basis of Breda's

claims. Accordingly, the Court applies the post-expiration arbitration clause analysis laid out in Litton and United Parcel Serv., Inc. to the Agreement.

The Court concludes that the source of the dispute in this case does not arise out of the Agreement. While the undisputed facts demonstrate that Breda used to have a cellular phone plan with Verizon and acquired both equipment and a phone number while that plan was active, D. 67, ¶¶ 3-5, those facts alone do not link the viability of her TCPA claims to her prior Verizon service, as Cellco contends. It is undisputed that the Verizon Calls that form the basis of Breda's TCPA claims were intended for another Verizon customer. D. 67, ¶ 5. In other words, the Verizon Calls did not relate to Breda's service when she was a Verizon customer or the Agreement governing that service. Other courts facing a similar issue have found that arbitration clauses should not be enforced against customers or former customers when the TCPA suit "aris[es] from a completely separate incident" than the parties' preexisting commercial relationship. In re Jiffy Lube Int'l, Inc., 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012); see Wagner v. Discovery Bank, No. 12-cv-02786-MSK-BNB, 2014 WL 128372, at *5 (D. Colo. Jan. 13, 2014). This type of TCPA claim can be distinguished from claims "concern[ing] [] accounts [plaintiffs] had already opened with Defendants and Plaintiffs' ongoing responsibility to make payments on those accounts." Cayanan v. Citi Holdings, Inc., 928 F. Supp. 2d 1182, 1208 (S.D. Cal. 2013). Accordingly, Cellco's motion to compel arbitration, D. 71, is denied. The Court now proceeds to the merits of Cellco's motion for summary judgment.

**B.     TCPA**

Cellco argues that Breda's claims fail as a matter of law because the phone calls that she received fall outside the purview of the TCPA. Breda alleges that Cellco violated 47 U.S.C. § 227(b)(1)(A) both strictly and willfully, which prohibits making "any call (other than a call made

for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice," id., to, *inter alia*, "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii) ("Section 227(b)(1)(A)(iii)"). "The elements of this type of TCPA claim are: (1) the defendant called a cellular telephone service or a service for which the called party is charged on a per call basis; (2) using an [Automated Telephone Dialing System, ("ATDS") ]; and (3) without the recipient's prior consent." Karle v. Sw. Credit Sys., No. 14-30058-MGM, 2015 WL 5025449, at *6 (D. Mass. June 22, 2015), report and recommendation adopted sub nom. Karle v. Sw. Credit Sys., Ne. Utilities Serv. Co., No. 14-30058-MGM, 2015 WL 5031966 (D. Mass. Aug. 25, 2015).

1. *Breda's Phone Number Is Not A Per-Charge Service Under The TCPA*

Breda's phone number is not "assigned" to a service for which she was charged for the Verizon Calls because she paid a flat monthly fee for unlimited calls. Cellco points to Breda's own deposition, in which she states that she pays a flat fee every month no matter how many calls are made. See D. 60, ¶¶ 13-14. Breda argues that because her number was assigned to a cellular telephone service, she does not need to establish that she was charged for the Verizon Calls, though in her response to the statement of facts she denies that her Republic Wireless plan was unlimited. See D. 67, ¶¶ 13-14. While Republic's representative testified in his Rule 30(b)(6) deposition that Republic can terminate service for a user's excessive use of calling or texting over the cellular service, nothing in the deposition or elsewhere in the record indicates that additional fees are incurred. D. 83 at 31-32. Accordingly, Breda has not established that she received the Verizon Calls on a phone service for which she was charged on a per call basis.

## 2. VoIP Telephone Service Is Not Per Se Cellular Telephone Service Under The TCPA

Cellco also argues that Breda's phone number is not "assigned" to a cellular telephone service within the meaning of the TCPA. Rather, Cellco contends that it is assigned to and listed as a wireline because her telephone service is preferred through VoIP, D. 60, ¶ 12, a technology "'allow[ing] a person to make voice calls using a broadband internet connection instead of a regular (or analog) telephone line,'" Jones v. Experian Info. Sols., No. 14-10218-GAO, 2016 WL 3945094, at *6 n.6 (D. Mass. July 19, 2016) (quoting Karle, 2015 WL 5025449, at *5 n.4), and that VoIP telephone service is not protected by Section 227(b)(1)(A)(iii). Breda argues that the listing of her number as having been assigned to a wireline VoIP service does not establish that fact, but offers no competing facts that raise a genuine question about the listing. Breda also argues that subsequent interpretation of the TCPA by the Federal Communications Commission ("FCC") has shown that the term "cellular telephone service" includes services that are similar in nature from the perspective of the consumer, such as VoIP. Breda admits in her response to the statement of facts that when she transferred her phone service from Verizon to Republic, and its VoIP provider Bandwidth, that she was receiving VoIP services rather than traditional cellular telephone services. D. 67, ¶¶ 9-10. The survival of her claims, therefore, turns on whether VoIP service may be considered cellular telephone service as a matter of law.

What few other courts have addressed this question have found that VoIP telephone service may be protected by Section 227(b)(1)(A)(iii) as cellular telephone service only when the plaintiff has raised genuine issues of fact that she "inform[ed] the [defendant] that the number connects to a cell phone," Ghawi v. Law Offices Howard Lee Schiff, P.C., No. 13-CV-115 (JBA), 2015 WL 6958010, at *4 (D. Conn. Nov. 10, 2015), or where the plaintiff has raised genuine issues of fact that she was charged additionally for the incoming calls to her VoIP service, see Jones, 2016 WL

7

3945094, at *7; Lynn v. Monarch Recovery Mgmt., Inc., 953 F. Supp. 2d 612, 616-17 (D. Md. 2013) (granting summary judgment for plaintiff where he provided evidence that his account was charged for the relevant calls). Where the plaintiff has not made such showing, courts have granted summary judgment for defendants. See Ghawi, 2015 WL 6958010, at *5 (granting summary judgment as to co-defendant for whom plaintiff had "not alleged or demonstrated that he ever informed [them] . . . that calls to the 5122 number went to his cell phone"); cf. Karle, 2015 WL 5025449, at *6 (granting summary judgment for defendant where plaintiff admitted in interrogatory that "she never stated it was assigned to a cell phone" (internal quotations and citations omitted)); Nieto v. Allied Interstate, Inc., No. 13-CV-3495 (CCB), 2014 WL 4980376, at *3 (D. Md. Oct. 3, 2014) (indicating, without reaching the issue, that "it is not clear" plaintiff's VoIP service on his cellular telephone was a cellular telephone service rather than "comparable to a cellular . . . device," as shown by defendants through deposition testimony and other facts in the summary judgment record), aff'd sub nom. Nieto v. Allied Interstate, LLC, 599 F. App'x 74 (4th Cir. 2015). The Court adopts this same approach – identifying that VoIP is not cellular telephone service *per se*, but that a defendant's knowledge that the VoIP service is received by a cellular telephone can satisfy a claim under Section 227(b)(1)(A)(iii).

Furthermore, in other contexts analyzing the TCPA and guidance documents from the FCC, courts have viewed cellular telephone service and VoIP telephone service distinctly. See, e.g., United States v. Dish Network LLC, No. 09-3073, 2017 WL 2427297, at *66 (C.D. Ill. June 5, 2017) ("[s]ince 2007, the FCC has allowed telephone customers to port, or transfer, a number from one type of telephone account to another, e.g., from a wireless account to a VoIP line"); United States v. Dish Network LLC, 75 F. Supp. 3d 916, 932 (C.D. Ill. 2014) ("[t]elephone numbers now may be ported from one location to another and from one type of telephone line to

another, e.g., from landlines to VoIP lines, and from landlines to wireless lines"). While Breda relies on a FCC declaratory ruling, which in a footnote referenced viewing "cellular telephone service" as an expansive term including "competing, functionally equivalent (from the consumer perspective) services using spectrum licensed under other names – such as 'Personal Communication Service,' '700 megahertz service,' and 'Advanced Wireless Service'" in order to "focus on the consumer-facing nature of the service being used rather than on which spectrum block is used to provide the service," In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7988 n.174 (July 10, 2015), this ruling has not been applied by a court to resolve a question of statutory ambiguity in § 227(b)(1)(A)(iii), and the Court declines to do so here. Furthermore, the footnote references multiple alternative types of communication services that could constitute cellular telephones service, but does not reference the TCPA's defined category of communication services that includes VoIP services as an "advanced communication services." 47 U.S.C. § 153(1).

Accordingly, the Court concludes that VoIP telephone service is distinct from cellular telephone service. Furthermore, if any claim for a violation of Section 227(b)(1)(A) arising from phone calls to a VoIP telephone service exists, the plaintiff must show either that the defendant was aware that the VoIP telephone service connected to a cellular phone or that she was charged pro rata for the relevant calls.

    3. *Breda's Phone Number Is Not Cellular Telephone Service Under The TCPA*

In this case, while Breda has alleged in her complaint that her telephone number was assigned to a cellular telephone service, D. 1, ¶ 20, this allegation is contradicted by Cellco's statement of material facts, supported by multiple declarations from employees of Republic and Bandwidth, which state that Breda's phone number could not have been a cellular telephone

number. See D. 60, ¶¶ 6-12, D. 62-2, ¶ 7; D. 62-3, ¶ 8. Breda responds that she received the number originally from Verizon Wireless and that it was assigned to her for a cellular service plan, prior to switching to Republic. D. 67, ¶ 6. However, as noted above, Breda admits that she moved her service to Republic, that ported the number to Bandwidth, D. 67, ¶ 9, and that Bandwidth only provides VoIP service for Republic customers, not cellular service, D. 67, ¶ 10. In fact, a Republic employee testified that all the phone numbers Republic receives from Bandwidth are classified as wire line numbers. D. 83 at 53. While Breda's phone number may once have been a cellular telephone number, the facts offered by Cellco show, with no genuine dispute presented by Breda, that when she changed her phone service to Republic, who in turn ported her number to Bandwidth to offer her VoIP-preferred service, it became indistinguishable from a VoIP phone number.

Furthermore, Breda has not offered any evidence that Cellco was aware, or that she communicated to Cellco in any capacity, that her VoIP telephone service was connected to a cell phone. See, e.g., D. 62-4 at 52-57; see Ghawi, 2015 WL 6958010, at *5. Indeed, there is some evidence in the record that suggests that Cellco would not have otherwise known that her number connected to a cell phone as the proffered records Cellco could have searched indicate that Breda's phone number was assigned to a wireline. See, e.g., D. 61; D. 61-1. Because Republic ported Breda's number via Bandwidth, D. 60, ¶¶ 8-10, Breda's contention about the name and description of her plan as a "Wi-Fi + Cell Talk + Text Service Plan" providing notice to Verizon is inapposite, D. 82, ¶¶ 13-14. The record does not indicate, and Breda does not allege or argue, that Cellco was aware that Breda's service was from Republic, or what it was called. Accordingly, Breda has

not established that she received the Verizon Calls on a cellular telephone service and her claims fail as a matter of law.[3]

## VI. Conclusion

For the foregoing reasons, the Court DENIES Cellco's motion to compel arbitration and dismiss or stay this case, D. 71, and ALLOWS Cellco's motion for summary judgment, D. 58.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[3] The parties also have several other pending motions. Given, however, the Court's ruling today on the motion for summary judgment, the Court DENIES D. 92, 100, 105, 106, 108 and 112 as moot.