# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| |
|---|
| ROBIN BREDA, *on behalf of herself and all others similarly situated*, |
| Plaintiff, |
| v. |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, |
| Defendant. |

Civil Action No.  1:16-cv-11512-DJC

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY
## <u>APPROVAL CLASS ACTION SETTLEMENT</u>

TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

TERMS OF THE SETTLEMENT ............................................................................. 4

    1.     Class Definition .................................................................................. 4

    2.     Benefits to Settlement Class Members ............................................. 5

    3.     Claim Form ........................................................................................ 6

    4.     Class Plaintiff and Class Counsel; Attorneys' Fees and Service Payment ........... 6

    5.     Notice ................................................................................................ 7

    6.     Opt-Out and Objection Rights .......................................................... 8

    7.     Releases ............................................................................................. 8

    8.     Proposed Deadlines ........................................................................... 8

POINT I
THE SETTLEMENT AGREEMENT
SHOULD BE PRELIMINARILY APPROVED ...................................................... 9

    I.     STANDARD FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT ............................................................. 9

    II.     THE SETTLEMENT AGREEMENT WARRANTS PRELIMINARY APPROVAL ................................................................. 11

    A.     The Class has been adequately represented ..................................... 12

    B.     The Settlement is the Result of Arm's Length Negotiations .............. 13

    C.     The Relief Provided to the Class is More than Adequate .................. 13

    D.     The additional factors identified in Rule 23(e)(2)(C) all favor approval ........... 14

    E.     The Proposed Settlement Treats Members of the Class Equally ........ 17

POINT II
THE SETTLEMENT CLASS SHOULD BE CERTIFIED .................................... 17

I.     LEGAL STANDARD FOR CONDITIONAL CERTIFICATION OF CLASS ACTION FOR SETTLEMENT PURPOSES ........................................ 17

A.    Rule 23(a)'s Requirements Are Satisfied ............................................................ 18

1.    Numerosity ................................................................................................. 18

2.    Commonality ............................................................................................... 18

3.    Typicality .................................................................................................... 19

4.    Adequacy of Representation ....................................................................... 20

B.    Rule 23(b)(3)'s Requirements Are Satisfied ...................................................... 20

1.    Predominance .............................................................................................. 21

2.    Superiority .................................................................................................. 22

POINT III
THE PROPOSED NOTICE TO CLASS MEMBERS MERITS APPROVAL ...................... 23

CONCLUSION ................................................................................................................ 24

## TABLE OF AUTHORITIES

Cases

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997)...................................................17, 20, 21, 22

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985)................................................. 12, 20

*Applegate v. Formed Fiber Techs., LLC*, 2013 WL 6162596 (D. Me. Nov. 21, 2013)................... 16

*Bennett v. Roark Capital Grp., Inc.*, 2011 WL 1703447 (D. Me. May 4, 2011)............................. 16

*Charvat v. Valente*, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019)............................................... 14

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir. 1996)........................ 10, 17

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) ........................................... 13, 14

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54 (D. Mass. 1997) ............................... 20

*East Tx. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395 (1977) ........................................... 19

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .................................................................. 17

*Ferrington v. McAfee, Inc.*, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ...................................... 13

*Forcellati v. Hyland's, Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ...................................... 13

*García– Rubiera v. Calderon*, 570 F.3d 443 (1st Cir. 2009)......................................................... 19

*Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941 (S.D. Fla. May 24, 2019)......... 16

*Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) ........... 16

*Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135 (D. Mass. 1988) ...................................................... 18

*Grace v. Perception Tech., Inc.*, 128 F.R.D. 165 (D. Mass. 1989)................................................ 22

*Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) ................................................................... 16

*Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935 (D. Minn. 2016) ..................................... 16

*Hill v. State St. Corp.*, No. 09-12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015)........................... 11

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ............................................................. 19

*In re Bos. Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275 (D. Mass. 2009) ........................... 19, 20

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197 (D. Me. 2003).....23

*In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75 (D. Mass. 2005) ........................ 15, 17

*In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009) ................... 10, 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998).....19

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (July 10, 2015) ......................................................................................................21

*In re StockerYale, Inc. Sec. Litig.*, 2007 WL 4589772 (D.N.H. Dec. 18, 2007)............................. 16

*In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249 (D.N.H. 2007) .............................. 11

*James v. JPMorgan Chase Bank, N.A.*, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ................. 13

*Johnson v. Comodo Grp.*, Civ. No. 16-4469, 2020 WL 525898 (D.N.J. Jan. 31, 2020) ................. 15

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) ......................................................... 14

*Lanteri v. Credit Prot. Ass'n, L.P.*, 2018 U.S. Dist. LEXIS 166345 (N.D. Ind. 2018).....................21

*Lees v. Anthem Ins. Cos., Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208 (E.D. Mo. June 10, 2015) ......................................................................................................................................16

*Markos v. Wells Fargo Bank, N.A.*,  2017 WL 416425 (N.D. Ga. Jan. 30, 2017)........................... 14

*Martin v. Dun & Bradstreet, Inc.*, 12-215 (N.D. Ill. Jan. 16, 2014) ............................................. 16

*Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) ................................................ 16

*McCormick v. Festiva Dev. Grp., LLC*, 2011 WL 2457883 (D. Me. June 20, 2011)...................... 16

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30 (1st Cir. 2009).......................................................................................................................... 11

*Novella v. Westchester Cnty.*, 661 F.3d 128 (2d Cir. 2011) ........................................................ 18

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008)................................................................. 18

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ....... 22, 23
*Prater v. Medicredit, Inc.*, No. 4:14CV00159 ERW, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) . 16
*Randle v. SpecTran*, 129 F.R.D. 386 (D. Mass. 1988) ................................................................. 22
*Reid v. Donelan*, 297 F.R.D. 185 (D. Mass. 2014) ....................................................................... 18
*Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) .................................... 14
*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974) ......................................... 19
*Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250 (D. Mass. 2005) .............................................. 18
*Trombley v. Bank of Am. Corp.*, 2011 WL 3273930 (D.R.I. July 29, 2011) ................................... 10
*Voss v. Rolland*, 592 F.3d 242 (1st Cir. 2010) .............................................................................. 9
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011) ....................................... 18
*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) ........................................ 21
*Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) ........................................... 17

## Statutes
47 U.S.C. § 227 ........................................................................................................................ 1, 2

## Other Authorities
Black's Law Dictionary (10th ed.2014) ....................................................................................... 13
Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................................... 1

## Rules
Fed. R. Civ. P. 23(a) ................................................................................................................. 18
Fed. R. Civ. P. 23(a)(2) ............................................................................................................ 18
Fed. R. Civ. P. 23(a)(3) ............................................................................................................ 19
Fed. R. Civ. P. 23(b)(3) ....................................................................................................... 21, 22
Fed. R. Civ. P. 23(b)(3). ........................................................................................................... 20
Fed. R. Civ. P. 23(e)(2) ............................................................................................................. 9

## Treatises
7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed.
   2011) ................................................................................................................................ 21
HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11 :41, 92-93 (4th ed.
   2002) ................................................................................................................................ 11
*Manual for Complex Litigation (Fourth)* §21.632 (2004) ("*Manual*") ........................................... 10
MANUAL FOR COMPLEX LITIGATION THIRD (1995) §30.212 ....................................................... 23

## INTRODUCTION

Plaintiff Robin Breda ("Plaintiff") respectfully submits this Memorandum in Support of Plaintiff's Motion to Preliminarily Approve the Parties' Class Action Settlement.

Plaintiff asks that the Court enter the Preliminary Approval Order attached as Exhibit 5 to the Settlement Agreement to (i) conditionally certify the Settlement Class for purposes of settlement; (ii) appoint Plaintiff as the Class Plaintiff; (iii) appoint Plaintiff's counsel as Class Counsel; (iv) preliminarily approve the terms of the Settlement Agreement; (v) approve the form, content and method of delivering notice to the Settlement Class as set out in the Settlement Agreement as "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)); and (vi) schedule a Final Approval hearing in accordance with the deadlines proposed in the Settlement Agreement.[1]

This settlement resolves the class claims for the 61,485 persons for whom Plaintiff sought class certification against Defendant Cellco Partnership d/b/a Verizon Wireless ("Defendant" or "Verizon") for alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"), by using artificial or prerecorded voices in calls to class members without their prior express consent.  Verizon denies any liability for the claims or that a contested damages class could be certified, but agrees to the terms and conditions of the Settlement Agreement to avoid continued, protracted litigation.

The Settlement Agreement provides for a non-reversionary Settlement Fund of $3,950,000 to pay (1) claims submitted from Settlement Class Members; (2) notice and administration Costs; (3) approved attorneys' fees and costs; and (4) a service award for the Plaintiff.  Based on the average number of calls per class member, Class Counsel anticipates each valid claim will be paid between $790 to $395 if five or ten percent respectively of the class submit a valid claim. (*Exhibit 2, Declaration of Keith J. Keogh ¶ 22*).  This is a fair and reasonable settlement, merits approval, and

---

[1] The Settlement Agreement and Exhibits are attached hereto as *Exhibit 1*.

Plaintiff respectfully requests that the Court grant this motion.

## BACKGROUND

Ms. Breda filed her class action complaint on July 21, 2016, (the "Complaint") in which she alleged for herself and others similarly situated that Verizon violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* by making prerecorded calls to cellular telephones without prior consent of the called party. (Doc. No. 1).  Plaintiff alleged Verizon was calling her cellular telephone using a blended automated/prerecorded voice. *Id.* ¶ 12.  She alleged the messages asked the Plaintiff to press a button to confirm she was a "Megan Charlton", to press an alternate button to indicate she was not, or a third button to indicate Verizon was calling the wrong number. *Id.*  Plaintiff alleged she was not the person Verizon was looking for, that she pressed the button to indicate Verizon was calling the wrong person, yet the prerecorded/artificial voice calls continued. *Id.* ¶¶ 14-15. Plaintiff alleged that the foregoing violated the TCPA and sought relief for herself and those similar situated. On November 18, 2016, Verizon answered the complaint denying the material allegations therein. (Doc. No. 11). Once the matter was joined, the Parties aggressively litigated the case.

Discovery was extensive.  The Parties propounded Fed. R. Civ. P 33 & 34 requests concerning the elements of the claims in chief, Defendant's defenses and class certification issues. (*Exhibit 3, Declaration of Sergei Lemberg* ¶ 5).  The Parties have taken eight depositions. *Id.*  This includes two depositions duces tecum of non-Parties, depositions of the Parties' respective experts and two depositions of the Plaintiff herself. *Id.*  Defendant and third parties produced and Plaintiff reviewed voluminous document production. *Id.* The Parties exchanged expert reports and conducted expert depositions. *Id.* Further, Defendant and LiveVox (a third-party dialing service provider) produced twenty-eight million (28,000,000) Verizon call records, contained in over one thousand (1,000) separate computer files, which were analyzed by Plaintiff's expert to identify class members. *Id.* Discovery in this proceeding was hard fought and the Court heard and resolved myriad discovery

related disputes including compelling the production of class discovery. (*E.g.* Docs. No. 16, 17, 19, 26, 34, 92, 97, 139, 143, 150, 151, 160, 164, 166, 171, etc.).

Beyond discovery related issues, substantive merits and class issues were litigated. On May 8, 2017, Verizon moved for summary judgment on the grounds that Plaintiff's cellular telephone was not "assigned to . . . a cellular telephone service" within the meaning of TCPA. (Doc. No. 219). On June 9, 2017, Verizon moved to compel arbitration based on an unrelated agreement between Verizon and the Plaintiff. (Doc. No. 71).  Plaintiff opposed both motions. (Docs. No. 66 & 84).  On November 17, 2017, the Court denied Verizon's motion to compel arbitration and allowed its motion for summary judgment. (Doc. No. 117).  Both Parties appealed the Court's ruling. (Docs. No. 121 & 124).  On August 2, 2019, the First Circuit affirmed the Court's denial of the motion to compel arbitration, reversed the entry of summary judgment and remanded for further proceedings. (Docs. No. 128 & 129).

On November 13, 2020, Verizon moved to dismiss the Complaint on the grounds that the TCPA was unconstitutional. (Doc. No. 181).  Plaintiff opposed the motion (Doc. No. 186) and the Court denied the motion (Doc. No. 208).

Following the close of discovery, Plaintiff moved for class certification. (Doc. No. 209). Plaintiff moved to certify a class consisting of:

> (1) All persons in the United States (2) whose cellular telephone number (3) was listed as a "can be reached" number on a Verizon account and (4) received a prerecorded collection call from Verizon (5) during which Verizon was informed that it had been calling the wrong number via keypress and which (6) thereafter received at least one additional prerecorded collection call from Verizon on the same telephone number and concerning the same Verizon account (7) within four years of the complaint in this action.

(Doc. No. 210 pg. 3).  Plaintiff's expert identified 61,485 unique cellular telephone numbers which meet the objective criteria set forth in the definition. *Id*.  Verizon also filed a motion to exclude

Plaintiff's expert report and testimony.  (Doc. No. 211-213).  On July 15, 2021, the Court held a hearing on the motion to certify and Verizon's motion to exclude Plaintiff's expert. (Doc. No. 225.)

Subsequently, the Parties agreed to a private mediation. (Doc. No. 226).  On August 31, 2021, the Parties attended a mediation session conducted before Hesha Abrams of Hesha Abrams Mediation, LLC, an experienced and nationally recognized neutral. (*Exhibit 3*, *Lemberg Decl.* ¶ 7; https://www.heshaabramsmediation.com/cv (visited September 27, 2021)).  The Parties provided their mediator with detailed mediation statements addressing all aspects of this case: claims in chief, defenses, class certification and the defenses or objections thereto, damages, and settlement. (*Exhibit 3, Lemberg Decl.* ¶ 7).  Counsel for the Parties zealously advocated for their clients and the putative class and mediation was conducted at arm's-length. *Id.*  The session resulted in an agreed set of terms to govern a class-wide settlement. The Parties then spent the next month memorializing their agreement in order to present it to the Court for approval.

## TERMS OF THE SETTLEMENT

1. Class Definition

The Settlement Class is:

the (1) 61,485 persons in the United States (2) whose cellular telephone number (3) was listed as a "can be reached" number on a Verizon account and (4) received a prerecorded collection call from Defendant (5) during which the person answering the call pressed a key or keys indicating that Defendant was calling the wrong number, and which (6) thereafter received at least one additional prerecorded collection call from Defendant on the same telephone number and concerning the same Defendant account (7) within four years of the filing of the complaint in this action.  Excluded from the Settlement Class are any judges to whom the Action was assigned and any member of the Court's staff and immediate family (to the extent they received a listed call) and all persons who opt-out of or are otherwise excluded from the Settlement Class pursuant to the requirements set forth in Section 11.1 of this Agreement.

(*Exhibit 1*, *Settlement Agreement* ¶ 2.24).  This definition largely mirrors the definition Plaintiff sought to certify in her motion for class certification.

2. <u>Benefits to Settlement Class Members</u>

Under the terms of the Settlement Agreement, Defendant shall make a one-time, all-inclusive payment of Three-Million Nine-Hundred and Fifty Thousand Dollars ($3,950,000) into a common settlement fund ("Settlement Fund") to resolve this Action. *Id.* ¶ 5.1.

Assuming the Settlement obtains Final Approval, and after the Effective Date occurs, the Settlement Administrator will deduct all fees, expenses, and costs approved by the Court and as provided for herein from the Settlement Fund, with the remaining funds being available for payment of Settlement Awards ("Net Settlement Amount").

From the Net Settlement Amount, the Settlement Administrator will distribute funds to Settlement Class Members, who submitted timely and valid claim forms (the "First Distribution"). Each Settlement Class member shall be entitled to a pro rata share of the Net Settlement Amount based on the number of Subsequent Calls they received after a Qualifying Call, not to exceed $500.00 per call. *Id.* ¶ 5.2(B).  As noted above, Class Counsel anticipates each valid claim will be paid between $790 to $395 if five or ten percent respectively of the class submit a valid claim. (*Exhibit 2*, *Keogh Decl. ¶* 22).

If settlement checks remain uncashed, the Settlement Administrator make a second pro rata distribution (the "Second Distribution") of settlement checks to Settlement Class Members who did cash their first settlement check provided, however, that no Settlement Class Member will receive any payments that exceed $500 per call in the aggregate, *i.e.*, the sum of the First Distribution and Second Distribution. (*Exhibit 1*, *Settlement Agreement* ¶ 10.1).  After a Second distribution, or if the administrative costs of a Second Distribution outweigh the remaining funds or would result in nominal distribution, any amounts remaining will be paid as *cy pres* to an entity approved by the Court. *Id.*

Settlement Class Members will have the option to select receipt of their Settlement Awards by either check or secure electronic payment. *Id.* ¶ 10.1. If no option is selected or the secure electronic payment cannot be completed, the Settlement Award shall be paid by check. *Id.*

3. Claim Form

To receive settlement benefits, Settlement Class Members will be required to complete and submit a short Claim Form certifying that they wish to claim their share of the Settlement Fund. *Id.* ¶¶ 2.2; *Settlement Agreement* Exhibit 1. A Claim Form will be included with the Notice or can be found and filed online at a dedicated website or over the telephone. Claim Forms will be considered timely if they are submitted electronically or postmarked by the Claims Deadline, 60 days after notice is sent. (*Exhibit 1*, *Settlement Agreement* ¶ 8.2(vii).

4. Class Plaintiff and Class Counsel; Attorneys' Fees and Service Payment

The Settlement Agreement provides that the Plaintiff will move to be appointed as the Class Plaintiff and Keogh Law, Ltd., and Lemberg Law LLC, to be appointed as Class Counsel to represent the Settlement Class Members. *Id.* ¶ 8.2.

The Settlement Agreement provides that Class Counsel may apply for an award of attorneys' fees and costs from the Settlement Fund and Plaintiff may apply to the Court for a service payment for her efforts on behalf of the Settlement Class. *Id.* ¶¶ 6.1 & 6.2.

The Settlement Agreement does not provide for any set amount, by agreement or otherwise, of fees, costs or for a service payment and contains no clear sailing provision. *Id.* Class Counsel anticipate asking the Court for up to one-third of the Settlement Fund ($1,316,666.66) in fees in addition to their costs and up to $15,000.00 as a service payment to the Plaintiff. Applications for fees, costs and a service award shall be made on the same day as the Notice Deadline (see infra) and posted on the Settlement Website. *Id.* ¶ 6.1.

The Court, and only the Court, shall determine the amount of any fee, cost and service awards in this action. *Id.* ¶ 6.3.

5. <u>Notice</u>

Written notice of the proposed settlement will be provided to the Class via mail, sent no later than twenty-one (21) days after the Court's entry of an order granting preliminary approval of the settlement (the "Notice Deadline"). *Id.* ¶¶ 8.2(iv) & 9.2.

Class Counsel will provide the Settlement Administrator with the list of the 61,485 telephone numbers for the Settlement Class. *Id.* ¶ 9.1. The Settlement Administrator will utilize a reverse look-up[2] service to obtain addresses associated with those telephone numbers and deliver the Mail Notice to those addresses, after updating all addresses using the National Change of Address database maintained by the United States Postal Service. *Id.* ¶ 9.2(i).   The Settlement Administrator will conduct additional skip tracing for any mail returned as undeliverable and will also send Email Notice for any undeliverable mailing addresses, where available.  *Ibid.*

The Settlement Administrator will also maintain (1) a Settlement Website with a claim portal and case information and documents (*id.* ¶ 9.2(ii)) and (2) a toll-free number to provide information to members of the Settlement Class and allow class members to submit claims by phone (*id.* ¶ 9.2(iii)).

The Parties request that the Court approve Epiq as the Settlement Administrator.  Epiq has provided an estimate of $93,000 for class notice and administration costs. (*Exhibit 2, Keogh Decl.* ¶ 22).

The Settlement Administrator will be responsible for timely compliance with any notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, costs of which will be the

---

[2] If mail is returned as undeliverable or if an address cannot be found, a reverse look-up for an e-mail address will be performed.

responsibility of Defendant separate from the Settlement Fund. (*Exhibit 1, Settlement Agreement* ¶ 9.2(iv)).

6. <u>Opt-Out and Objection Rights</u>

Members of the Settlement Class can opt out of the class by sending a written request for exclusion to the Settlement Administrator. *Id.* ¶ 11.  Any individual opt-out notices must be postmarked by the "Opt-Out and Objection Deadline," no later than 60 days after commencement of the Notice Plan. *Id.* ¶¶ 2.6 & 8.2(vi).  Also by that time, any Class Member who wishes to object to the Settlement Agreement must file with the Court, and mail to Class Counsel and Defendant's Counsel, a written notice of the objection, along with supporting papers setting forth the objector's grounds for objection. *Id.* ¶ 11.3-11.4.

7. <u>Releases</u>

The Release is limited to the claims arising from the factual predicate of Plaintiff's and the Settlement Class Member's underlying claims.  It provides that the Plaintiff, Settlement Class Members, others that could act on their behalf release the Released Parties (Defendant and related entities) from all claims "relating or concerning Verizon's telephone calls to the Plaintiff and Settlement Class Members that are the subject matter of the Action." *Id.* ¶ 13.1.

8. <u>Proposed Deadlines</u>

The Settlement Agreement provides that Class Counsel will file their brief in support of Final Approval of the Settlement Agreement 21 days after the deadline for class members to submit claims, opt-out, or object to the settlement. *Id.* ¶ 12.1, *Settlement Agreement* <u>Exhibit 5</u> ¶ 19.

The following table sets forth the important deadlines proposed in the Settlement Agreement and are also stated in the proposed Preliminary Approval Order:

| EVENT | SCHEDULED DATE |
| --- | --- |
| Notice mailing deadline (commencement of Notice Plan) | 21 days after entry of Preliminary Approval Order |
| Attorney's Fees and Costs application due by | 21 days after entry of Preliminary Approval Order |
| Incentive Award application due by | 21 days after entry of Preliminary Approval Order |
| Last day for Class Members to opt-out of Settlement | 60 days following the Notice mailing deadline |
| Last day for Class Members to Object to the Settlement | 60 days following the Notice mailing deadline |
| Last day to submit a Valid Claim Form | 60 days following the Notice mailing deadline |
| Briefs in support of Final Approval due by | 21 days following the deadline to opt-out, object, or submit claims |
| Verizon to file certification regarding CAFA notice requirements | 21 days following the deadline to opt-out, object, or submit claims |
| Final Approval Hearing | No earlier than 110 days after entry of Preliminary Approval Order |

The Settlement Agreement represents the Parties' best efforts to settle this litigation on terms that are fair and reasonable under the circumstances and that adequately protect the interests of the Settlement Class Members.    Accordingly, the Settlement Agreement meets the threshold requirements for preliminary approval and the Settlement Class should be preliminary certified.

**POINT I**
**THE SETTLEMENT AGREEMENT**
**SHOULD BE PRELIMINARILY APPROVED**

I.    <u>STANDARD FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT</u>

To approve a class action settlement, a district court must find the settlement is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2), *accord, Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010);

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).  If the parties "negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009).

At the "preliminary approval" stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." MANUAL FOR COMPLEX LITIGATION (FOURTH) §21.632 (2004).  "A proposed settlement of a class action may be given preliminary approval where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval." *Trombley v. Bank of Am. Corp.*, 2011 WL 3273930, at *5 (D.R.I. July 29, 2011) (citation omitted).

The recent revisions to Fed. R. Civ. P. 23(e) incorporate these requirements and set forth the procedures and standards for approval of a settlement and a notice plan.  In particular, Rule 23(e)(1)(B) sets forth that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Thus, the Parties must make a showing that the Court will be likely able to approve the settlement in toto when considering the factors of Rule 23(e)(2)[3] and that the settlement class is amenable to class certification under Rule 23.

---

[3] The Rule 23(e)(2) requirements for overall approval are a finding that the settlement is "fair, reasonable and adequate after considering whether: A) the class representatives and class counsel have adequately represented the class; B) the proposal was negotiated at arm's length; C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

Public policy favors the settlement of class actions. *See Hill v. State St. Corp.*, No. 09-12146, 2015 WL 127728, at *6 (D. Mass. Jan. 8, 2015) (determination of whether settlement is fair, reasonable and adequate should be conducted "within the context of the public policy favoring settlement"); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007) ("[P]ublic policy generally favors settlement-particularly in class actions . . . ."). While public policy "encourages settlements, the burden remains on the proponents to show that the settlement is reasonable." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009) (internal citations omitted). The final approval of any proposed class settlement ultimately requires the Court to balance "the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Id.* at 44.

## II.   THE SETTLEMENT AGREEMENT WARRANTS PRELIMINARY APPROVAL

As an initial matter, the Settlement Agreement is presumptively fair. A presumption of fairness to the settlement attaches where "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11 :41, 92-93 (4th ed. 2002). This case has been litigated for over five years and was not resolved until discovery was closed and the parties had brief and argued class certification and a *Daubert* motion. Plaintiff and Defendant have discovered every aspect of their case through depositions, voluminous document production, third party discovery, expert reports and merits, including an appeal, and class related motion practice. Thus, more than sufficient discovery has been taken to enable counsel and the Court to act intelligently in reaching a negotiated compromise and the agreement is presumptively fair.

This presumption is buttressed by consideration of the factors set forth in Rule 23(e)(2).

A.  The Class has been adequately represented

The Settlement Class has been adequately represented by the Plaintiff and by counsel.

"The duty of adequate representation requires counsel to represent the class competently and vigorously and without conflicts of interest with the class." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009).  Further, the court must be satisfied that the interests of the class representative do not conflict with the interests of any of the class members, *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985), and that Plaintiff's counsel are qualified and experienced and provided vigorous representation during the course of the case. *Id.*

First, Plaintiff is an adequate class representative.  She has engaged in the case from the outset, communicated with her counsel regularly, produced documents, sat for two depositions and sought to pursue this matter as a class action. (*Exhibit 3, Lemberg Decl.* ¶ 3).  There are no known conflicts between the representative and members of the Settlement Class.

Second, Class Counsel meet the adequacy requirement.  Second, Plaintiff's counsel are all experienced litigators of class actions under the TCPA, having served as class counsel in numerous TCPA actions. (*Exhibit 2, Keogh Decl.* ¶¶ 2-3, 5; *Exhibit 3, Lemberg Decl.* ¶¶ 8-18). They are expertly able to evaluate the merits of their case, Defendant's defenses, benefits of this settlement, and risks of litigation. This factor weighs in favor of approval.

Further, Class Counsel has vigorously pursued the class claims here for five years, from investigating Plaintiff's claims, drafting and filing a well-pled complaint, taking discovery into merits and class issues, substantive motion practice to negotiating settlement terms and the settlement agreement.  The result of Plaintiff's and Class Counsels' efforts is this excellent settlement.  Thus, the Court should find the adequacy of representation prong met.

B.   The Settlement is the Result of Arm's Length Negotiations

Black's Law Dictionary (10th ed.2014) defines "arm's length transaction" as:

1. A transaction between two unrelated and unaffiliated parties. 2. A transaction between two parties, however closely related they may be, conducted as if the parties were strangers, so that no conflict of interest arises.

The Settlement Agreement is the result of such arm's length negotiations. (*Exhibit 2, Keogh Decl.* ¶ 20). The Settlement Agreement was the result of an all-day long mediation presided over by a respected mediator.  Further there is no clear sailing agreement relating to attorney fees or the incentive award.  That the negotiations were arm's length and not affected by any relationship is also borne out by the results obtained for the class.   Thus, the Court should find that the proposal here was negotiated at arm's length.

C.   The Relief Provided to the Class is More than Adequate

The Settlement Fund is $3,950,000 and there are approximately 61,485 class members. Assuming the Court grants the requested attorney's fees of 1/3 of the fund ($1,316,666.66), litigation costs and expenses of approximately $104,500, administration costs of $93,000 and the $15,000.00 service payment, Settlement Class Members will share $2,420,833.33. (*Exhibit 2, Keogh Decl.* ¶ 22)

Assuming a 5% claims rate[4], the average member recovery would be approximately $785 at $143 per call.[5]   At a 10% claim rate, average recovery would be approximately $390 at $71 per call. These figures establish that the Settlement Fund is very substantial and well within the range of

---

[4] It is not possible to know the claims rate until after the claims process is complete and here the per-member recovery will also depend on the number of Subsequent Calls they received.   Yet in consumer class actions it is not unusual to have participation rates of 3-10 percent. *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("The prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent.") (*quoting Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012)); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043–44 (S.D. Cal. 2015) (claims rate of 7.7% is "higher than average" in TCPA action); *James v. JPMorgan Chase Bank, N.A.*, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) (participation rate of five percent "typically occurs in a TCPA class action").

[5]      These amounts are calculated by dividing the assumed Net Settlement Fund ($2,420,833.33) by the number of claiming members (5% of 61,485) and incorporates the average number of calls received by the class (5.5 calls).

approved settlements. *See, e.g.*, *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—far less than the anticipated recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) (finding that thirty dollars per claimant is "'within the range of recoveries' in TCPA class actions"); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (approving $34.60 per claimant with a 7.8% claims rate); *Charvat v. Valente*, 2019 WL 5576932, at *6 (N.D. Ill. Oct. 28, 2019) ("While the average consumer payout of $22.17 is not anywhere the statutory maximum, it is also not out of line with other approved TCPA class action settlements."); *Couser*, 125 F. Supp. 3d at 1043–44 (claims rate of 7.7% is "higher than average" in TCPA action and "although Class Members are only expected to recover approximately $13.75, the Court finds that in light of the large number of Class Member claimants and high claims rate, the amount of the Settlement Fund weighs in favor of approving the Settlement."); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *5 & 10 (N.D. Cal. Aug. 29, 2014) (approving $20-40 per claiming class member with a participation rate of 3.2%).

In agreeing to a Settlement Fund of $3,950,000.00, Plaintiff and her counsel have considered the risks inherent to litigation and the various defenses available to Verizon. The reality that Plaintiff and the Settlement Class Members could end up recovering nothing or only a fraction of the settlement benefits if the Court did not certify a class or if Plaintiff failed to prevail was significant enough to convince Plaintiff and counsel, with the assistance of a seasoned mediator, that the benefits of the settlement outweigh the gamble of continued litigation.

     D.   The additional factors identified in Rule 23(e)(2)(C) all favor approval

(i) the costs, risks and delay of trial and appeal support approval.

14

"[A] significant element of risk adheres to any litigation taken to binary adjudication." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 97 (D. Mass. 2005). Plaintiff believes her claims are meritorious, but success in a class action is costly, both in time and in real dollar terms, and it is risky because success is not assured. *See, e.g.*, *Johnson v. Comodo Grp.*, Civ. No. 16-4469, 2020 WL 525898 (D.N.J. Jan. 31, 2020) (class certified, summary judgment for defendant denied, summary judgment ruling now on appeal to the Third Circuit and stayed pending related Supreme Court action). Settlement now, on these excellent terms, reduces these costs, risks and delays.

(ii) the effectiveness of any proposed method of distributing relief to the class merits approval.

The plan is for direct mail and email notice and a simple claims process. The notice will be sent by first class mail to members of the Settlement Class or by email if there is no valid address after the Claims Administrator performs a reverse lookup of the telephone numbers called. A dedicated website will have case documents and deadlines. The notice will have a detachable claim form and the website will have a claims portal. To submit a claim, class members will need to provide straightforward identifying information, advise whether they want payment by check or electronically and provide an affirmation of identification. (*Exhibit 1, Settlement Agreement* Exhibit 1).

Further, funds will be distributed equitably. Each member is entitled to recover an equal share per allegedly unlawful Subsequent Call they received. This method treats each member equally relative to their potential damages.

(iii) the terms of any proposed award of attorneys' fees, including timing of payment, support approval of the settlement.

The Settlement Agreement does not guarantee any set fee nor does it provide that Verizon has agreed to any set fee amount. Instead, Class Counsel anticipates asking the Court to approve a fee award of 1/3 of the Settlement Fund - an amount Massachusetts courts and others in the First Circuit routinely award. *See Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044, at *2 (D. Mass.

Nov. 3, 2016) ("the one-third fee requested here is fair and reasonable"); *In re StockerYale, Inc. Sec. Litig.*, 2007 WL 4589772, at *6 (D.N.H. Dec. 18, 2007) (awarding fees in the amount of 33% of settlement fund); *McCormick v. Festiva Dev. Grp., LLC*, 2011 WL 2457883, at *1 (D. Me. June 20, 2011) (awarding fees in the amount of one third of settlement fund); *Applegate v. Formed Fiber Techs., LLC*, 2013 WL 6162596, at *1 (D. Me. Nov. 21, 2013) (same); *Bennett v. Roark Capital Grp., Inc.*, 2011 WL 1703447, at *2 (D. Me. May 4, 2011) (same)[6].

Regarding timing, Class Counsel will file their application well before the objection deadline allowing Class Members to review or object, the Court will rule on the application and actual funding will occur at the same time as funding of the Settlement Fund.   Thus, the provisions regarding fees are fair, reasonable and support approval.

(iv) and regarding the fourth sub-factor, the only agreement required to be identified under Rule 23(e)(3) is the Settlement Agreement Plaintiff submits to the Court.   There are no other agreements at issue.

---

[6] It is also commonly awarded in TCPA class actions.  *See Martin v. Dun & Bradstreet, Inc.*, 12-215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (Awarding attorneys' fees of one-third of total settlement fund); *In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (36% of the first $10 million of the settlement) (Holderman, J.); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Shah, J.) (38% of total fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.)(36% of the fund net admin costs). *See also Lees v. Anthem Ins. Cos., Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding 34 percent of common fund as attorneys' fees in TCPA class action); *Prater v. Medicredit, Inc.*, No. 4:14CV00159 ERW, 2015 WL 8331602, at *4 (E.D. Mo. Dec. 7, 2015) (awarding one third of the common fund in a TCPA class action); *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) ("[C]ourts in this district regularly base fee awards on the market rate of one-third of the common fund in TCPA class action settlements."); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 949-50 (D. Minn. 2016) (citing TCPA cases from three circuits where attorney's fees were awarded roughly "equal to one-third of the settlement fund").

Considering all these factors, the relief provided to the class is more than adequate and merits approval.

      E.   <u>The Proposed Settlement Treats Members of the Class Equally</u>

The final Rule 23(e)(2) consideration also supports approval where the proposed settlement treats all members the same.  As noted, each Settlement Class Member is entitled to equal share from the Settlement Fund based on the number of Subsequent Calls they received.  No group is treated differently.  Further, each class member may object or opt out in the same fashion.  Because there is no disparate treatment between members, the settlement merits approval.

For the foregoing reasons, the Parties' Settlement Agreement is fair reasonable and adequate and merits approval.

**POINT II**
**THE SETTLEMENT CLASS SHOULD BE CERTIFIED**

  I.   <u>LEGAL STANDARD FOR CONDITIONAL CERTIFICATION OF CLASS ACTION FOR SETTLEMENT PURPOSES</u>

In order to certify a settlement class at the preliminary approval stage, the Court must also determine whether the requirements of Rule 23 are met. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).  In doing so, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). "When a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (citing *Amchem*, 521 U.S. at 620). "This cautionary approach notwithstanding, the law favors class action settlements." *Id.* (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)).

A. Rule 23(a)'s Requirements Are Satisfied

    1. Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous the joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250, 258 (D. Mass. 2005). The standard of impracticability does not mean "impossibility" but only difficulty or inconvenience of joining all members of the class. *Novella v. Westchester Cnty.*, 661 F.3d 128, 143 (2d Cir. 2011). While there is no specific threshold for numerosity, "a class size of forty or more will generally suffice in the First Circuit." *Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014)

There 61,485 persons in the class. Joinder of their claims would be impracticable and the numerosity standard is met. *See, e.g., Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (proposed class consisting of 800 to 900 members made joinder impracticable).

    2. Commonality

Pursuant to Rule 23(a)(2), a court must determine whether "there are questions of law or fact common to the class," ordinarily known as "commonality." Fed. R. Civ. P. 23(a)(2). Commonality is demonstrated when the claims of all class members "depend upon a common contention . . . that is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011). Commonality exists "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008).

In this case, although Verizon zealously opposed Plaintiff's Motion for Class Certification, for settlement purposes, there are several common issues capable of class-wide resolution, which Verizon does not oppose for settlement purposes only, including:

> (1) Whether Verizon's collection calls qualify as "prerecorded voice" calls under 47 U.S.C. § 227(b)(1)(A).

(2) Whether a "wrong number" key press during Verizon's CBR collection calls revokes Verizon's claimed "prior express consent" to call the number

As such, the commonality requirement is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The requirement is satisfied if the "class representative[s] . . . 'possess the same interest and suffer the same injury' as the class members." *East Tx. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). Typicality is present when the class representative's claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." *García– Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)) (alterations in original). The typicality inquiry allows the court to "'align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Bos. Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 282 (D. Mass. 2009) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998)).

In this case, typicality is satisfied because Plaintiff's claims arise from the same practice that gives rise to the claims of the other class members – namely, Verizon's choice to place prerecorded debt collection calls to "can be reached" cellphones instead of the customer's phone number that Verizon itself provides. Moreover, Plaintiff's claims are based on the same legal theory as the class members' claims: these calls violate 47 U.S.C. § 227(b)(1)(A)(iii).

4. Adequacy of Representation

As noted above, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This element is generally characterized as an inquiry into whether the attorneys together with the named plaintiff will act diligently on behalf of the class. *Amchem*, 521 U.S. at 625; *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63-64 (D. Mass. 1997). The First Circuit employs a two-part test in analyzing adequacy: (1) the class representative's interests must not conflict with the interests of the class; and (2) class counsel is experienced, qualified and able to vigorously conduct the proposed litigation. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *In re Bos. Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d at 282.

Both requirements are met. First, Plaintiff's counsel are experienced class action lawyers whose combined experience in consumer protection and complex class action litigation, and current diligence and commitment to this litigation, will more than adequately protect the interests of the Settlement Class. (*Exhibit 2, Keogh Decl.* ¶¶ 3-6; *Exhibit 3, Lemberg Decl.* ¶¶ 8-18).

Second, Plaintiff has actively participated in this litigation, was deposed twice and responded to written discovery. Further, she has the same claim as the class. Thus, there is no conflict or antagonism between the proposed Class Representative and the Settlement Class Members. *Exhibit 2*, Keogh *Decl.* ¶23. As shown through commonality and typicality, Plaintiff's claims are identical to those of the rest of the Class members.

B. Rule 23(b)(3)'s Requirements Are Satisfied

The proposed Settlement Class should be certified pursuant to Rule 23(b)(3), which requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

1. <u>Predominance</u>

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011). Further, "a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000). In this case, the common questions identified above predominate this action.

To begin, the initial question whether Verizon's collection calls qualify as "prerecorded voice" calls, thereby triggering application of the TCPA, is a common question as described above.

Further, although Verizon zealously opposed Plaintiff's Motion for Class Certification, for settlement purposes, the overriding, common question in this litigation is whether a "wrong number" key press is a "reasonable method" of revoking consent, which Verizon does not oppose for settlement purposes only. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7966 (July 10, 2015) ("2015 Order")("Consumers have a right to revoke consent, using any reasonable method including orally or in writing.") Resolution of that question is common and predominates all claims. *See Lanteri v. Credit Prot. Ass'n, L.P.*, 2018 U.S. Dist. LEXIS 166345, (N.D. Ind. 2018) (certifying TCPA class because "answering the common question – Did the "stop" message revoke consent? – determines whether consent was revoked for all

potential class members.")

2. Superiority

A class action is the superior method of resolution if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Four factors are considered in determining whether a class action is superior to individual litigation: (1) whether individuals have a strong interest in controlling potentially separate actions; (2) a class action's effect on competing litigation involving members of the class; (3) whether resolution of the case in a single forum is desirable; and (4) the potential difficulties that management of a class action presents. Fed. R. Civ. P. 23(b)(3).

Although Verizon zealously opposed Plaintiff's Motion for Class Certification, for settlement purposes, the superiority considerations weigh in favor of certification, consent, which Verizon does not oppose for settlement purposes only. "Certification allows the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). It is neither economically feasible, nor judicially efficient, for the many thousands of Settlement Class Members to pursue their claims against Verizon on an individual basis. *See Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) certification is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation."); *Grace v. Perception Tech., Inc.*, 128 F.R.D. 165, 171 (D. Mass. 1989); *Randle v. SpecTran*, 129 F.R.D. 386 (D. Mass. 1988). Finally, the difficulties of managing a class action are vitiated by the fact of this Agreement. When "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

<u>POINT III</u>
<u>THE PROPOSED NOTICE TO CLASS MEMBERS MERITS APPROVAL</u>

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is finally approved by the Court. MANUAL FOR COMPLEX LITIGATION THIRD (1995) §30.212. The Settlement Agreement proposes notice of the Settlement be provided by direct mail and email to all class members. The Settlement Administrator will perform a reverse look up to identify addresses and email addresses of Settlement Class Member's from the list of 61,485 unique cellular telephone numbers identified by Plaintiff's expert as falling within the Class.

Under Rule 23(e) and Constitutional notions of due process, adequate notice must be given to all potential class members to enable them to make an intelligent choice as to whether to opt-out of the class.  The Supreme Court has held that Rule 23 and due process do not require delivery of actual notice to every class member.  Rather, "notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  In addition, it is well-settled that in the usual situation, first class mail of the notice and claim form to each class member satisfies Rule 23's notice requirements. *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003) ("[I]ndividualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances").

In this case, the Notice, attached as <u>Exhibits 2 & 4</u> to the Settlement Agreement, describe this case, Class Member's rights to recover, to opt-out or to object.  Exhibit 2 is a short-form notice and Exhibit 4 is a long-form notice, which supplies additional information on the same matters will be posted on the settlement website.  The settlement website will have the notice translated in Spanish as well.

## CONCLUSION

For the reasons set forth above, the Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order:

1. Preliminarily approving the terms of the Parties' Settlement Agreement;

2. Conditionally certifying the Settlement Class for the purpose of settlement;

3. Appointing Plaintiff as Class Plaintiff;

4. Appointing Plaintiff's counsel as Class Counsel;

5. Approving the form, content and method of delivering Notice to the Settlement Class set forth in the Parties' Settlement Agreement and in the exhibits thereto; and

6. Scheduling a Final Approval hearing in accordance with the deadlines provided in the Settlement Agreement.

Respectfully Submitted,
Dated: October 7, 2021

/s/ Sergei Lemberg                                   /s/ Keith J. Keogh
 Sergei Lemberg (BBO#650671)        -and-    Keith J. Keogh (Pro Hac Vice)
 Stephen Taylor (Pro Hac Vice)                  Timothy J. Sostrin (Pro Hac Vice)
 Lemberg Law LLC                                      Keogh Law, Ltd.
 43 Danbury Road                                       55 W. Monroe St., Suite 3390
 Wilton, CT 06897                                       Chicago, Illinois   60603
 203.653.2250 x5500 (office)                    312.726.1092 (office)
 203.653.3425 (fax)                                   312.726.1093 (fax)
 slemberg@lemberglaw.com                      keith@keoghlaw.com

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 7, 2021, I served a true and accurate copy of the foregoing to counsel of record through the Court's CM/ECF system which sent notice of such filing to all counsel of record.

 /s/ Keith J. Keogh          
Keith J. Keogh
