# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| |
|---|
| ROBIN BREDA, *on behalf of herself and all others similarly situated*,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>　　　　Defendant. |

Civil Action No.  1:16-cv-11512-DJC

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
## <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

TABLE CONTENTS

INTRODUCTION................................................................................................1

BACKGROUND……………………………………………………………………2

SETTLEMENT, NOTICE, AND ADMINISTRATION ......................................5

    1.    Class Definition........................................................................5

    2.    Benefits to Settlement Class Members..............................................5

    3.    The Release..............................................................................7

    4.    Notice .....................................................................................7

    5.    Claim Forms.............................................................................8

    6.    Opt-Out and Objection Rights ......................................................8

    7.    Attorneys' Fees, Expenses, and Incentive Award................................9

POINT I ...........................................................................................................9

THE SETTLEMENT AGREEMENT SHOULD BE FINALLY APPROVED.....................9

    I.    STANDARD FOR FINALY APPROVAL OF A CLASS ACTION
        SETTLEMENT.......................................................................9

    II.    THE SETTLEMENT AGREEMENT WARRANTS FINAL APPROVAL....... 10

    A.    The Class has been adequately represented ...................................... 11

    B.    The Settlement is the Result of Arm's Length Negotiations ............................. 12

    C.    The Relief provided to the Class is More than Adequate.................................. 12

    D.    The additional factors identified in Rule 23(e)(2)(C) all favor approval ........... 14

    E.    The Proposed Settlement Treats Members of the Class Equally ........................ 17

CONCLUSION ..................................................................................................17

## TABLES OF AUTHORITIES

**Cases**

*ACA Int'l v. FCC*, 885 F.3d 687, 709 (D.C. Cir. 2018)......................................................................2

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985).....................................................11

*Applegate v. Formed Fiber Techs., LLC*, 2013 WL 6162596 (D. Me. Nov. 21, 2013)...................16

*Arthur v. SLM Corp.*, No. C10-0198 JLR (W.D. Wash. Aug. 8, 2012), Docket No. 249 at 2..........13

*Bayat v. Bank of the West*, 2015 U.S. Dist. LEXIS 50416 (N.D. Cal. 2015) ..................................13

*Bennett v. Roark Capital Grp., Inc.*, 2011 WL 1703447 (D. Me. May 4, 2011)..............................16

*Braver v Northstar,* 5:17-cv-00383-F, ECF 273 (W.D. Ok. 2020)...................................................7

*Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59 (D. Mass. 1999)...............................................14

*Charvat v. Valente*, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019)....................................................13

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir. 1996)...............................10

*Del Sesto v. Prospect CharterCARE, LLC*, 2019 U.S. Dist. LEXIS 175173 (D. R.I. Oct. 9, 2019) .14

*Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941 (S.D. Fla. May 24, 2019).........16

*Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) ..........16

*Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) ......................................................................16

*Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935 (D. Minn. 2016) .....................................16

*Hill v. State St. Corp.*, No. 09-12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015)......................9, 14

*In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation*, Master Docket
    No. 3:13-cv-1866-AWT (D. Conn. November 10, 2016)............................................................7

*In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75 (D. Mass. 2005) .............................14

*In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009) ...................10, 11

*In re Samsung Top-Load Washing Mach. Mktg.*, 2020 U.S. Dist. LEXIS 90759
 (W.D. Okla. May 22, 2020) ......................................................................................................15

*In re StockerYale, Inc. Sec. Litig.*, 2007 WL 4589772 (D.N.H. Dec. 18, 2007)..............................16
*In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249 (D.N.H. 2007) .................................9

*James v. JPMorgan Chase Bank, N.A.*, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) .................. 13

*Johnson v. Comodo Grp.*, Civ. No. 16-4469, 2020 WL 525898 (D.N.J. Jan. 31, 2020) .................. 14

*Jonsson v. USCB, Inc.*, 2015 U.S. Dist. LEXIS 69934 (C.D. Cal. 2015)............................................. 7

*Keim v. ADF Midatlantic, LLC*, 2020 U.S. Dist. LEXIS 49933 (S.D. Fla. 2020).............................. 7

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) ........................................................ 13, 16

*Lee v. Global Tel\*Link Corp.*, 2018 U.S. Dist. LEXIS 163410 (S.D. Cal. 2018) ........................ 7, 13

*Lees v. Anthem Ins. Cos., Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208 (E.D. Mo. June 10, 2015) ................................................................................................................................................. 16

*Legg v. AEO*, 14-cv-02440-VEC (S.D. NY 2017)............................................................................. 7

*Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, (N.D. Ill. 2018).......................................................... 7

*Markos v. Wells Fargo Bank, N.A.*,  2017 WL 416425 (N.D. Ga. Jan. 30, 2017)............................ 13

*Martin v. Dun & Bradstreet, Inc.*, 12-215 (N.D. Ill. Jan. 16, 2014) .................................................. 16

*Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) ...................................................... 16

*Martinez v. Medicredit, Inc.*, 2018 U.S. Dist. LEXIS 81818 (E.D. Mo. 2018).................................. 7

*McCormick v. Festiva Dev. Grp., LLC*, 2011 WL 2457883 (D. Me. June 20, 2011)....................... 16

*Medoff v. CVS Caremark Corp.*, 2016 U.S. Dist. LEXIS 19135, (D.R.I. Feb. 17, 2016)................. 14

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30 (1st Cir. 2009)........................................................................................................................... 9, 10

*Prater v. Medicredit, Inc.*, No. 4:14CV00159 ERW, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) . 16

*Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, (1st Cir. 2021)............................................. 10

*Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)...................................... 13

*Silver v. Pa. Higher Ed. Assistance Agency*, No. 14-cv-00652-PJH, 2020 U.S. Dist. LEXIS, (N.D. Cal. Feb. 7, 2020) ......................................................................................................................... 14

*Spillman v. RPM Pizza, LLC*, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ................ 13

*Voss v. Rolland*, 592 F.3d 242 (1st Cir. 2010)................................................................................... 10

*Willett, et al. v. Redflex Traffic Systems, Inc.*, et al., Case No. 13-cv-01241-JCH-RHS, Doc. 269
  (D.NM Oct. 24, 2016) ......................................................................................................... 7

**Statutes**
47 U.S.C. § 227(b)(1)(A) ........................................................................................................ 2

47 U.S.C. § 227(b)(3)(B) ........................................................................................................ 2

**Other Authorities**
Black's Law Dictionary (10th ed.2014) ................................................................................ 12

**Rules**
Fed. R. Civ. P 33 & 34 ............................................................................................................ 3

Fed. R. Civ. P. 23(e)(2) ............................................................................................. 10, 11, 17

Rule 23(e)(3) .......................................................................................................................... 17

**Regulations**
30 F.C.C. Rcd. 7961 ................................................................................................................ 2

## INTRODUCTION

After five years of hard-fought litigation, including an appeal to the First Circuit, extensive discovery, dispositive motions, and contested briefing on class certification, plaintiff Robin Breda ("Plaintiff") and defendant Cellco Partnership dba Verizon Wireless ("Defendant") (collectively, the "Parties") reached a class-wide settlement agreement (the Agreement) to fully and finally resolve this litigation. The Court preliminarily approved the Agreement on November 18, 2021. Doc. 241. In doing so, the Court found the Agreement to be sufficiently, fair, reasonable, and adequate to merit notice to the class. *Id.* at 1-2.

The Class agreed, as 3,884 valid Claim Forms (41 of which were filed late) were received, not a single class member has objected to any portion of the settlement, and only one class member has opted out of the settlement. *Exhibit C – Azari Decl.* at ¶¶ 13-25.

Under the Agreement, each class member who submitted a valid claim form will receive a *pro rata* share of the $3.95 million dollar settlement fund according to the number of qualifying calls they received. Assuming the Court grants Plaintiff's request for attorneys' fees, costs,[1] and incentive award (Doc. 244), class members who submitted a valid claim will receive, on average, $619.49 each, at $112.63 per call ($612.95 if the 41 late claims are allowed).[2] This is a great result for the class that exceeds the relief provided in numerous similar actions. For these reasons and those explained below,

---

[1] Since filing the fee petition (Doc. 244), Plaintiff's counsel have incurred an additional $1,373.37 in travel related expenses in connection with the final approval hearing. *See Exhibit E - Keogh Decl.* at ¶ 24. The expenses reflected herein include those additional expenses.

[2] The net settlement fund is $2,380,731.69, calculated as follows: $3,950,000 (fund) - $1,316,666 (attorneys' fees) - $105,856.32 (expenses) - $15,000 (incentive award) – $131,745.99 (notice and administration costs) = $2,380,731.69 (net). Accordingly, the average expected payout is calculated as follows:

$2,380,731.69 (net settlement fund) / 3,843 (timely claims) = $619.49 (average expected total payout) / 5.5 (average number of calls) = $112.63 (average expected payout per call).

Plaintiff asks the Court to enter the Final Approval Order attached as Exhibit A and the Judgment attached as Exhibit B to fully and finally resolve this action.

## BACKGROUND

The Telephone Consumer Protection Act ("TCPA") prohibits prerecorded voice calls to cellular telephone numbers without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A).  In addition, the Act allows telephone consumers to revoke consent to such calls "at any time and through any reasonable means . . . that clearly expresses a desire not to receive further messages." *ACA Int'l v. FCC*, 885 F.3d 687, 709 (D.C. Cir. 2018) (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7994 (2015)).

Like other consumer protection statutes, Congress set up the TCPA so that its provisions could be enforced through a private right of action providing for the recovery of statutory damages, thus reducing the cost and scope of a regulatory enforcement mechanism. § 227(b)(3)(B) (providing recovery of $500 for each violation).

Ms. Breda filed her class action complaint on July 21, 2016.  Doc. 1.  Plaintiff alleged Defendant placed prerecorded voice calls to her cellular telephone number concerning somebody else's Verizon account even after Plaintiff informed Defendant it was calling the wrong number. *Id.* ¶ 12.  Specifically, Plaintiff alleged a prerecorded prompt in the calls asked the Plaintiff to press a button to confirm she was a "Megan Charlton", to press an alternate button to indicate she was not, or a third button to indicate Verizon was calling the wrong number. *Id.*  Plaintiff alleged she was not the person Verizon was looking for, that she pressed the button to indicate Verizon was calling the wrong person, yet the prerecorded voice calls continued. *Id.* ¶¶ 14-15. Plaintiff alleged that the foregoing violated the TCPA and sought relief for herself and a class of similarly situated persons. On November 18, 2016, Verizon answered the complaint denying the material allegations therein. (Doc. No. 11). The Parties proceeded to aggressively litigate the case.

2

On May 8, 2017, Verizon moved for summary judgment on the grounds that Plaintiff's cellular telephone was not "assigned to . . . a cellular telephone service" within the meaning of TCPA. (Doc. No. 219). On June 9, 2017, Verizon moved to compel arbitration based on an unrelated agreement between Verizon and the Plaintiff. (Doc. No. 71). Plaintiff opposed both motions. (Docs. No. 66 & 84). On November 17, 2017, the Court denied Verizon's motion to compel arbitration and allowed its motion for summary judgment. (Doc. No. 117). Both Parties appealed the Court's ruling. (Docs. No. 121 & 124). On August 2, 2019, the First Circuit affirmed the Court's denial of the motion to compel arbitration, reversed the entry of summary judgment and remanded for further proceedings. (Docs. No. 128 & 129).

Upon remand, the parties continued to conduct extensive discovery, including Fed. R. Civ. P 33 & 34 requests concerning the elements of the claims in chief, Defendant's defenses and class certification issue, and conducting eight depositions. *Doc. 237-3 - Declaration of Sergei Lemberg* at ¶ 5. This includes two depositions duces tecum of non-Parties, depositions of the Parties' respective experts and two depositions of the Plaintiff herself. *Id.* Defendant and third parties also produced and Plaintiff reviewed voluminous document production. *Id.* The Parties exchanged expert reports and conducted expert depositions. *Id.* Further, Defendant and LiveVox (a third-party dialing service provider) produced twenty-eight million (28,000,000) Verizon call records, contained in over one thousand (1,000) separate computer files, which were analyzed by Plaintiff's expert to identify class members. *Id.* Discovery in this proceeding was hard fought and the Court heard and resolved myriad discovery related disputes including compelling the production of class discovery. (*E.g.* Docs. No. 16, 17, 19, 26, 34, 92, 97, 139, 143, 150, 151, 160, 164, 166, 171, etc.).

On November 13, 2020, Verizon moved to dismiss the Complaint on the grounds that the TCPA was unconstitutional. (Doc. No. 181). Plaintiff opposed the motion (Doc. No. 186) and the Court denied the motion (Doc. No. 208).

Following the close of discovery, Plaintiff moved for class certification. (Doc. No. 209). Plaintiff moved to certify a class consisting of:

> (1) All persons in the United States (2) whose cellular telephone number (3) was listed as a "can be reached" number on a Verizon account and (4) received a prerecorded collection call from Verizon (5) during which Verizon was informed that it had been calling the wrong number via keypress and which (6) thereafter received at least one additional prerecorded collection call from Verizon on the same telephone number and concerning the same Verizon account (7) within four years of the complaint in this action.

(Doc. No. 210 pg. 3). Plaintiff's expert identified 61,485 unique cellular telephone numbers which meet the objective criteria set forth in the definition. *Id*. Verizon opposed the motion for class certification and also filed a motion to exclude Plaintiff's expert report and testimony. (Doc. No. 211-213). On July 15, 2021, the Court held a hearing on the motion to certify and Verizon's motion to exclude Plaintiff's expert. (Doc. No. 225).

Subsequently, the Parties agreed to a private mediation. (Doc. No. 226). On August 31, 2021, the Parties attended a mediation session conducted before Hesha Abrams of Hesha Abrams Mediation, LLC, an experienced and nationally recognized neutral. (*Doc. 237-3*, *Lemberg Decl.* at ¶ 7; https://www.heshaabramsmediation.com/cv (visited September 27, 2021)). The Parties provided their mediator with detailed mediation statements addressing all aspects of this case: claims in chief, defenses, class certification and the defenses or objections thereto, damages, and settlement. (*Doc. 237-3*, *Lemberg Decl.* at ¶ 7). Counsel for the Parties zealously advocated for their clients and the putative class and mediation was conducted at arm's-length. *Id*. The session resulted in an agreed set of terms to govern a class-wide settlement. The Parties then spent the next month memorializing their agreement in order to present it to the Court for approval.

On October 7, 2021, the Plaintiff moved the Court to conditionally certify the proposed settlement class and grant preliminary approval of the Agreement. Following a hearing on November,

18, 2021, the Court granted the motion and ordered notice to be provided to the class in accordance with the terms of the Agreement. Doc. 241.

<b><u>SETTLEMENT, NOTICE, AND ADMINISTRATION</u></b>

The following summarizes the terms of the Agreement, which is attached hereto as Exhibit D, as well as the notice and administration of the Settlement to date.

    1.  <u>Class Definition</u>

The Settlement Class conditionally certified by the Court is as follows:

> the (1) 61,485 persons in the United States (2) whose cellular telephone number (3) was listed as a "can be reached" number on a Verizon account and (4) received a prerecorded collection call from Defendant (5) during which the person answering the call pressed a key or keys indicating that Defendant was calling the wrong number, and which (6) thereafter received at least one additional prerecorded collection call from Defendant on the same telephone number and concerning the same Defendant account (7) within four years of the filing of the complaint in this action.

> Excluded from the Settlement Class are any judges to whom the Action was assigned and any member of the Court's staff and immediate family (to the extent they received a listed call) and all persons who opt-out of or are otherwise excluded from the Settlement Class pursuant to the requirements set forth in Section 11.1 of this Agreement.

Doc. 241 at p. 2. This definition largely mirrors the definition Plaintiff sought to certify in her motion for class certification.

    2.  <u>Benefits to Settlement Class Members</u>

Under the terms of the Agreement, Defendant shall make a one-time, all-inclusive payment of Three-Million Nine-Hundred and Fifty Thousand Dollars ($3,950,000) into a common settlement fund ("Settlement Fund") to resolve this Action. *Exhibit D – Settlement Agreement* at ¶ 5.1.

Assuming the Settlement obtains Final Approval, and after the Effective Date occurs, the Settlement Administrator will deduct all fees, expenses, and costs approved by the Court from the Settlement Fund, with the remaining funds being available for payment of Settlement Awards ("Net Settlement Amount"). *Id.* at 5.2(A).

5

From the Net Settlement Amount, the Settlement Administrator will distribute funds to Settlement Class Members, who submitted timely and valid claim forms (the "First Distribution"). Each Settlement Class member shall be entitled to a pro rata share of the Net Settlement Amount based on the number of Subsequent Calls they received after a Qualifying Call that informed Verizon it was calling the wrong number, not to exceed $500.00 per call. *Id.* ¶ 5.2(B). Based on the number of timely claims, and assuming the Court grants the pending motion for attorney's fees, costs, and incentive award, the average claimant, who received 5.5 subsequent calls, will be paid approximately $619.49, at $112.63 per call, or $612.95 if the 41 late claims are allowed.

If settlement checks remain uncashed after the date of expiration, the Settlement Administrator will make a second pro rata distribution (the "Second Distribution") of settlement checks to Settlement Class Members who did cash their first settlement check provided, however, that no Settlement Class Member will receive any payments that exceed $500 per call in the aggregate, *i.e.*, the sum of the First Distribution and Second Distribution. *Exhibit D – Settlement Agreement* at ¶ 10.1. After a Second distribution, or if the administrative costs of a Second Distribution outweigh the remaining funds or would result in nominal distribution, any amounts remaining will be paid as *cy pres* to an entity approved by the Court. *Id.* Any such funds are expected to be nominal.

Plaintiff would suggest National Consumer Law Center ("NCLC"), which is located in Boston but has a nationwide presence, as *Cy Pres*, with the additional requirement that funds be earmarked for work to maintain TCPA protections for consumers. One would be hard pressed to find another organization so closely aligned to the class's interests than NCLC.[3]

---

[3] NCLC has fought to preserve the TCPA's protections for years before the congress, before the FCC, and before the courts as an *amicus curiae*, and is a leading consumer advocacy organization on TCPA matters. Since 2014, it has commented on almost every major, and many minor, proceeding in the FCC concerning the TCPA.  https://www.nclc.org/issues/robocalls-and-telemarketing.html.  NCLC staff meet regularly with staff of the former and current FCC Chairman's office, as well as staff of

### 3. The Release

In consideration of Verizon's payment into the common fund, the Agreement provides a limited Release, encompassing only those claims arising from the phone calls giving rise to the TCPA claims asserted in this action. Specifically, the release provides that the Plaintiff, Settlement Class Members, and others that could act on their behalf release the Released Parties (Defendant and related entities) from all claims "relating or concerning Verizon's telephone calls to the Plaintiff and Settlement Class Members that are the subject matter of the Action." *Id.* ¶ 13.1.

### 4. Notice

In accordance with the terms of the settlement agreement and the Court's Preliminary Approval Order, the Settlement Administrator sent direct written notice of the proposed settlement to the class via first class mail on January 6, 2022, after obtaining the class member's best available contact information from a reverse look up service and the National Change of Address database maintained by the United States Postal Service. *Exhibit C – Azari Decl.* at ¶¶ 13-14. Where a mailing address was unavailable, or where the mailed notice was returned as undeliverable, the Settlement Administrator sent written notice via e-mail to the best available e-mail addresses. *Id.* at ¶¶ 17-19.

---

other Commissioners' office, and staff of the Consumer and Governmental Affairs Bureau. *Id* NCLC staff have also testified before both the House of Representatives and the Senate concerning the TCPA. *Id.* In addition, NCLC has submitted amicus briefs to the Supreme Court and Federal Courts of Appeals in numerous TCPA cases. *Id.* Thus, NCLC's work reasonably approximate the interests pursued by the class. Given NCLC's proven record of TCPA advocacy, numerous courts have approved NCLC as a *cy pres* recipient in TCPA class actions, often over defendant's objection. *See e.g., Braver v Northstar,* 5:17-cv-00383-F, ECF 273 (W.D. Ok. 2020); *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 205-06 (N.D. Ill. 2018); *Keim v. ADF Midatlantic, LLC,* 2020 U.S. Dist. LEXIS 49933, *11 (S.D. Fla. 2020); *Lee v. Global Tel\*Link Corp.*, 2018 U.S. Dist. LEXIS 163410, *23-25 (S.D. Cal. 2018); *Martinez v. Medicredit, Inc.*, 2018 U.S. Dist. LEXIS 81818, *4-5 (E.D. Mo. 2018); *Jonsson v. USCB, Inc.*, 2015 U.S. Dist. LEXIS 69934, *30 (C.D. Cal. 2015); *Willett, et al. v. Redflex Traffic Systems, Inc.*, et al., Case No. 13-cv-01241-JCH-RHS, Doc. 269 (D.NM Oct. 24, 2016); See also *Legg v. AEO*, 14-cv-02440-VEC (S.D. NY 2017) (TCPA) (Approving NCLC for TCPA class case); *In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation*, Master Docket No. 3:13-cv-1866-AWT (D. Conn. November 10, 2016) (Same).

Through these processes, the Settlement Administrator was able to deliver direct notice of the proposed settlement to 92.2% of the Settlement Class. *Id.* at ¶ 20

The Settlement Administrator also maintained (1) a Settlement Website with a claim portal and case information and documents and (2) a toll-free number to provide information to members of the Settlement Class and allow class members to submit claims by phone. *Id.* at ¶¶ 21-24.

     5.  Claim Forms

To receive settlement benefits, Settlement Class Members were required to complete and submit a short Claim Form certifying that they wish to claim their share of the Settlement Fund. *Exhibit D - Settlement Agreement* at ¶ 2.2 and ex. 1 thereto. A Claim Form was included with the Notice and could be returned by mail, filed online at the settlement website, or over the telephone at the designated toll-free number. *Exhibit C – Azari Decl.* at ¶¶ 21, 23. Claim Forms were considered timely if they were submitted electronically or postmarked by March 7, 2022. *Id.* a ¶ 27.

As of March 11, 2022, the Settlement Administrator has received 3,943 Claim Forms (1,210 online, 94 IVR, and 2,639 paper), of which 59 Claim Forms were duplicates. Of the 3,884 non-duplicate Claim Forms, 41 Claim Forms were filed late, which resulted in 3,843 Claim Forms that were timely. *Ibid.* Plaintiff would ask these late forms be allowed as they do not result in a material reduction of the payment made on timely claims and these persons are providing a release to Defendant.

Accordingly, the claim rate for the proposed settlement is 6.2%. As discussed below, this claim rate is greater than the 5% average in consumer class actions and within the range expected.

     6.  Opt-Out and Objection Rights

Members of the Settlement Class had the ability to opt-out of the class by sending a written request for exclusion to the Settlement Administrator. *Exhibit D – Settlement Agreement* ¶ 2.6 & 8.2(vi). Only one (1) person opted-out of the class. *Exhibit C – Azari Decl.* at ¶ 26. In addition, class

members had the ability to object to the settlement. *Exhibit D – Settlement Agreement* at ¶ 11.3-11.4. No class member has done so. *Exhibit C – Azari Decl.* at ¶ 26.

       7.   Attorneys' Fees, Expenses, and Incentive Award

The Settlement Agreement provides that Class Counsel may apply for an award of attorneys' fees and costs from the Settlement Fund and Plaintiff may apply to the Court for a service payment for her efforts on behalf of the Settlement Class. *Exhibit D – Settlement Agreement* at ¶¶ 6.1 & 6.2. It does not provide for any set amount, by agreement or otherwise, of fees, costs or for a service payment and contains no clear sailing provision. *Id.*

The class notice and settlement website set forth the exact amounts sought for attorney fees and incentive award. Further, Plaintiff filed a Motion for Attorney's Fees, Expenses, and Incentive Award on January 6, 2022. Doc. 245. That motion was posted on the settlement website for the class members' review. *Exhibit C – Azari Decl.* at ¶ 21. No class member has objected to the requested fees, expenses, or incentive award, or to any other aspect of the settlement. *Id.* at ¶ 26.

**POINT I**
**THE SETTLEMENT AGREEMENT**
**SHOULD BE FINALLY APPROVED**

I.    STANDARD FOR FINALY APPROVAL OF A CLASS ACTION SETTLEMENT

Public policy favors the settlement of class actions. *See Hill v. State St. Corp.*, No. 09-12146, 2014 U.S. Dist. LEXIS 179702, *17 (D. Mass. Jan. 8, 2015) (determination of whether settlement is fair, reasonable and adequate should be conducted "within the context of the public policy favoring settlement"); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007) ("[P]ublic policy generally favors settlement-particularly in class actions . . . ."). While public policy "encourages settlements, the burden remains on the proponents to show that the settlement is reasonable." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009) (internal citations omitted). The final approval of any proposed class

settlement ultimately requires the Court to balance "the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Id.* at 44.

A court may finally approve a class action settlement:

> "only on finding that it is fair, reasonable and adequate after considering whether: A) the class representatives and class counsel have adequately represented the class; B) the proposal was negotiated at arm's length; C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2), *accord, Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).

However, "[w]here the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)).

## II.   THE SETTLEMENT AGREEMENT WARRANTS FINAL APPROVAL

As an initial matter, the Settlement Agreement is presumptively reasonable because the parties negotiated at arm's length and conducted sufficient discovery. *Id.*

This case has been litigated for over five years and was not resolved until after a ruling on arbitration, ruling on summary judgment, after a ruling by the First Circuit, and even then not resolved until discovery was closed and the parties had briefed and argued class certification and a *Daubert* motion.  Plaintiff and Defendant have discovered every aspect of their case through depositions, voluminous document production, third party discovery, expert reports and merits, including an

appeal, and class related motion practice.  Thus, more than sufficient discovery has been taken.

After discovery closed, the parties participated in a full-day mediation session presided over by a respected and independent mediator.  There is no clear sailing agreement relating to attorney fees or the incentive award.  Thus, the settlement resulted from arm's length negotiations, as further explained below, and must be presumed to be reasonable.  This presumption is buttressed by consideration of the factors set forth in Rule 23(e)(2).

> A.  The Class has been adequately represented

The Settlement Class has been adequately represented by the Plaintiff and by counsel.

"The duty of adequate representation requires counsel to represent the class competently and vigorously and without conflicts of interest with the class." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009).  Further, the court must be satisfied that the interests of the class representative do not conflict with the interests of any of the class members, *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985), and that Plaintiff's counsel are qualified and experienced and provided vigorous representation during the course of the case. *Id.*

First, Plaintiff is an adequate class representative.  She has engaged in the case from the outset, communicated with her counsel regularly, produced documents, sat for <u>two</u> depositions and sought to pursue this matter as a class action. (*Doc. 237-3, Lemberg Decl.* ¶ 3).  There are no known conflicts between the representative and members of the Settlement Class.

Second, Class Counsel meet the adequacy requirement.  Plaintiff's counsel are all experienced litigators of class actions under the TCPA, having served as class counsel in numerous TCPA actions. (*Exhibit E, Keogh Decl.* ¶¶ 4-5; *Doc. 237-3, Lemberg Decl.* ¶¶ 8-18).  They were expertly able to evaluate the merits of their case, Defendant's defenses, benefits of this settlement, and risks of litigation. This factor weighs in favor of approval.

Further, Class Counsel has vigorously pursued the class claims here for five years, from investigating Plaintiff's claims, drafting and filing a well-pled complaint, taking discovery into merits and class issues, substantive motion practice to negotiating settlement terms and the settlement agreement. The result of Plaintiff's and Class Counsels' efforts is this excellent settlement. Thus, the Court should find the adequacy of representation prong met.

B.    The Settlement is the Result of Arm's Length Negotiations

Black's Law Dictionary (10th ed.2014) defines "arm's length transaction" as:

1. A transaction between two unrelated and unaffiliated parties. 2. A transaction between two parties, however closely related they may be, conducted as if the parties were strangers, so that no conflict of interest arises.

The Settlement Agreement is the result of such arm's length negotiations. (*Exhibit E, Keogh Decl.* ¶ 19). The Settlement Agreement was the result of an all-day long mediation presided over by a respected mediator. Further there is no clear sailing agreement relating to attorney fees or the incentive award. That the negotiations were arm's length and not affected by any relationship is also borne out by the results obtained for the class.   Thus, the Court should find that the proposal here was negotiated at arm's length.

C.    The Relief provided to the Class is More than Adequate

The Settlement provides $3,950,000 to a class of 61,485 members and allowed class members to file claims to obtain direct payments after the deduction of notice and administration costs, and any attorneys' fees, expenses, and an incentive award granted by the Court. Assuming the Court grants the Motion for Attorneys' Fees ($1,316,666.66), Expenses ($105,856.32), and Incentive Award ($15,000.00), after the costs of Notice and Administration ($131,745.99), claimants will share direct payments totaling $2,380,731.69.

Given the 6.2% claim rate,[4] the average claimant will recover approximately $619.49 at $112.63 per call or $612.95 if the 41 late claims are allowed.[5] This relief exceeds the relief provided in most approved TCPA class settlements. *See, e.g.*, *Markos v. Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 17546,*11 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—far less than the recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) (finding that thirty dollars per claimant is "'within the range of recoveries' in TCPA class actions"); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (approving $34.60 per claimant); *Charvat v. Valente*, 2019 U.S. Dist. LEXIS 187225, *20 (N.D. Ill. Oct. 28, 2019) (noting that average payout of $22.17 is "not out of line with other approved TCPA class action settlements."); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043–44 (approving settlement providing $13.75 per claimant); *Rose v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 121641, *14 and 30 (N.D. Cal. Aug. 29, 2014) (approving $20-40 per claiming class member with a participation rate of 3.2%).

The positive response from the class also supports the adequacy of the relief provided.  Not a single class member objected to the settlement and only 1 class member chose to opt out of the

---

[4]     This claim rate exceeds that obtained in many approved TCPA settlements. *See Spillman v. RPM Pizza, LLC*, 2013 U.S. Dist. LEXIS 72947 at *2, *9 (M.D. La. May 23, 2013) (finally approving TCPA Settlement and finding claim rate of "less than one percent" to be "consistent with other TCPA class action settlements"); *Lee v. Global Tel\*Link Corp.*, 2018 U.S. Dist. LEXIS 163410, 21 (C.D. Cal. September 24, 2018) (finally approving TCPA class settlement with a claim rate of 1.8%); *Bayat v. Bank of the West*, 2015 U.S. Dist. LEXIS 50416, *15 (N.D. Cal. 2015) (granting final approval in TCPA action after noting 1.9% claim rate for monetary relief); *Arthur v. SLM Corp.*, No. C10-0198 JLR (W.D. Wash. Aug. 8, 2012), Docket No. 249 at 2-3 (claims rate of approximately 2%); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (final approval where claim rate was 2.5%).

[5]     These amounts are calculated by dividing the Net Settlement Fund ($2,380,731.69) by the number of claiming members (3,843) and incorporates the average number of calls received by the class (5.5 calls).

settlement. The lack of opposition supports the adequacy and fairness of the relief provided. *Hill v. State St. Corp.*, 2014 U.S. Dist. LEXIS 179702, *21 (D. Mass. November 26, 2014) (the "favorable reaction of class to settlement, albeit not dispositive, constitutes strong evidence of fairness of proposed settlement and supports judicial approval") (quoting *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999)); *see also Del Sesto v. Prospect CharterCARE, LLC*, 2019 U.S. Dist. LEXIS 175173, *12 (D. R.I. Oct. 9, 2019) ("The lack of any serious objection to the settlement agreement from members of the class weighs in favor of approving the settlement.") (*quoting Medoff v. CVS Caremark Corp.*, 2016 U.S. Dist. LEXIS 19135, (D.R.I. Feb. 17, 2016)).

> D.   The additional factors identified in Rule 23(e)(2)(C) all favor approval

(i) *the costs, risks and delay of trial and appeal support approval.*

"[A] significant element of risk adheres to any litigation taken to binary adjudication." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 97 (D. Mass. 2005).  Plaintiff believes her claims are meritorious, but success in a class action is costly, both in time and in real dollar terms, and it is risky because success is not assured. *See, e.g.*, *Johnson v. Comodo Grp.*, Civ. No. 16-4469, 2020 U.S. Dist. LEXIS 18033 (D.N.J. Jan. 31, 2020) (class certified, summary judgment for defendant denied, summary judgment ruling now on appeal to the Third Circuit and stayed pending related Supreme Court action). Settlement now, on these excellent terms, reduces these costs, risks and delays.

In this case, Defendant vehemently opposed class certification, arguing among other things that determining whether the class members successfully revoked consent would be an individualized inquiry that would predominate this action. *See* Doc. 217.  Although Plaintiff respectfully disagrees, other courts have accepted similar arguments and there was an appreciable risk that this Court would do the same. *See  Silver v. Pa. Higher Ed. Assistance Agency*, No. 14-cv-00652-PJH, 2020 U.S. Dist. LEXIS, *34 (N.D. Cal. Feb. 7, 2020) (denying TCPA class certification based on failure to prove

common questions concerning revocation of individual questions).   And given Defendant's vast resources, a ruling from the Court granting Plaintiff's motion for class certification would have almost certainly been appealed.    Thus, the costs, risk, and delay of trial and appeal support final approval here.

(ii) *the effectiveness of any proposed method of distributing relief to the class merits approval*.

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg on Class Actions, § 13:53 (5th ed.) Thus, "[a] claims process should be as simple, straightforward, and nonburdensome as possible." *In re Samsung Top-Load Washing Mach. Mktg.*, 2020 U.S. Dist. LEXIS 90759, 57 (W.D. Okla. May 22, 2020).  The claims process in this case easily satisfies this standard. To being, the claim forms were successfully sent via direct mail and email to over 92% of the class. *Exhibit C – Azari Decl.* at ¶ 20.  The class members could return those forms by mail and could also file a claim at the settlement website or over the phone. The claim form was also simple and straightforward - it did not require the class members to submit any documentation whatsoever, but instead required them to submit their signature and contact information.  The claims process was thus far simpler than others granted final approval. *See e.g., In re Samsung Top-Load Washing Mach. Mktg.*, 2020 U.S. Dist. LEXIS 90759 at *58-59 (requiring certain class members to submit photographs with their claim forms).

(iii)   *the terms of any proposed award of attorneys' fees, including timing of payment, support approval of the settlement.*

The Settlement Agreement does not guarantee any set fee nor does it provide that Verizon has agreed to any set fee amount.   Instead, Class Counsel asks the Court to approve a fee award of 1/3 of

the Settlement Fund, which is $1,316,666, and expenses in the amount of $105,856.32.[6]  One Third

of the Settlement Fund is routinely awarded by Massachusetts courts and others in the First Circuit.

*See Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016)

("the one-third fee requested here is fair and reasonable"); *In re StockerYale, Inc. Sec. Litig.*, 2007

WL 4589772, at *6 (D.N.H. Dec. 18, 2007) (awarding fees in the amount of 33% of settlement fund);

*McCormick v. Festiva Dev. Grp., LLC*, 2011 WL 2457883, at *1 (D. Me. June 20, 2011) (awarding

fees in the amount of one third of settlement fund); *Applegate v. Formed Fiber Techs., LLC*, 2013

WL 6162596, at *1 (D. Me. Nov. 21, 2013) (same); *Bennett v. Roark Capital Grp., Inc.*, 2011 WL

1703447, at *2 (D. Me. May 4, 2011) (same).[7]

Regarding timing, the notice provided the exact amount of fees and incentive award sought

and Class Counsel filed their application and put it on the settlement website on the same day that

notice was sent to the class.  Thus, Class Members were advised of the exact amounts in the direct

notice and were able to review the reasoning of the fee request before deciding whether to object or

---

[6] The expenses have increased by $1,373.37 since Plaintiff filed the fee petition (Doc. 244) to account for the additional travel expenses incurred for final approval hearing.  *See Exhibit E*, Keogh Decl. at ¶ 24.

[7] It is also commonly awarded in TCPA class actions.  *See Martin v. Dun & Bradstreet, Inc.*, 12-215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (Awarding attorneys' fees of one-third of total settlement fund); *In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (36% of the first $10 million of the settlement) (Holderman, J.); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Shah, J.) (38% of total fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.)(36% of the fund net admin costs). *See also Lees v. Anthem Ins. Cos., Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding 34 percent of common fund as attorneys' fees in TCPA class action); *Prater v. Medicredit, Inc.*, No. 4:14CV00159 ERW, 2015 WL 8331602, at *4 (E.D. Mo. Dec. 7, 2015) (awarding one third of the common fund in a TCPA class action); *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) ("[C]ourts in this district regularly base fee awards on the market rate of one-third of the common fund in TCPA class action settlements."); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 949-50 (D. Minn. 2016) (citing TCPA cases from three circuits where attorney's fees were awarded roughly "equal to one-third of the settlement fund").

opt-out of the settlement.  Further, these fees will not be paid unless and until (1), the Court approves them, (2) the fund is fully satisfied, and (3) the settlement becomes effective after judgment is entered and any possible appeals resolved.  *Exhibit D – Settlement Agreement* at ¶ 6.1.  Thus, the provisions regarding fees are fair, reasonable and support approval.

(iv) *There are No Rule 23(e)(3) Agreements*

Rule 23(e)(3) requires settling parties to identify any agreements made in connection with the settlement, such as those made to resolve objector's claims.  There were no such agreements made in connection with this case, and indeed there were no objectors to the settlement. *Exhibit* E – Keogh Decl. at ¶ 23.

E.  <u>The Proposed Settlement Treats Members of the Class Equally</u>

The final Rule 23(e)(2) consideration also supports approval where the proposed settlement treats all members the same.  As noted, each Settlement Class Member is entitled to equal share from the Settlement Fund based on the number of Subsequent Calls they received.  This method treats each member equally relative to their potential damages - no group is treated differently.  Further, each class member could object or opt out in the same fashion.

For the foregoing reasons, the Parties' Settlement Agreement is fair reasonable and adequate and merits approval.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Plaintiff respectfully requests that the Court enter the proposed Final Approval Order attached hereto as Exhibit A and the Final Judgment attached hereto as Exhibit B, approve the class settlement and award $15,000 for an incentive award, $1,316,666 for attorney fees and $105,856.32 for expenses.

Dated: March 27, 2022

Respectfully Submitted,

ROBIN BREDA,
By her attorneys,


/s/ Keith J. Keogh
Keith J. Keogh (Pro Hac Vice)
Timothy J. Sostrin (Pro Hac Vice)
Keogh Law, Ltd.
55 W. Monroe St., Suite 3390
Chicago, Illinois   60603
312.726.1092 (office)
312.726.1093 (fax)
keith@keoghlaw.com

Sergei Lemberg (BBO#650671)
Stephen Taylor (Pro Hac Vice)
Lemberg Law LLC
43 Danbury Road
Wilton, CT 06897
203.653.2250 x5500 (office)
203.653.3425 (fax)
slemberg@lemberglaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 28, 2022, I served a true and accurate copy of the foregoing to counsel of record through the Court's CM/ECF system which sent notice of such filing to all counsel of record.

 /s/ Keith J. Keogh
Keith J. Keogh